# In the United States Court of Federal Claims

No. 18-985 C
Filed: November 30, 2018[*]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| | \* |
| | \* |
| PARTNER 4 RECOVERY, | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant, | \* |
| | \* |
| and | \* |
| | \* |
| FLUOR ENTERPRISES, INC., | \* |
| | \* |
| Defendant-Intervenor. | \* |
| | \* |
| | \* |

5 U.S.C. § 706(2)(A) (Scope of
   Review);
28 U.S.C. § 1491(Tucker Act
   Jurisdiction);
48 C.F.R §§ 3.101-1 (Federal
   Acquisition Regulation, Standards
   of Conduct), 9.505 (General Rules,
   Organizational Conflicts of
   Interest), 15.305 (Proposal
   Evaluation), 15.308 (Source
   Selection Decision), 15.404-1
   (Proposal Analysis Techniques).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Kevin Paul Connelly**, Vedder Price, PC, Washington, D.C., Counsel for Plaintiff.

**Michael Damien Snyder**, United States Department of Justice, Civil Division, Washington,
D.C., Counsel for the Government.

**Michael J. Schaengold**, Greenberg Traurig, LLP, Washington, D.C., Counsel for Defendant-
Intervenor.

---

[*] On November 26, 2018, the court forwarded a sealed copy of this Memorandum Opinion
And Final Order to the parties to redact any confidential and/or privileged information from the
public version and note any citation or editorial errors that required correction.  The parties had
until November 29, 2018, close of business, to file any proposed redactions or revisions.  The
confidential information noted by the parties has been redacted from the public version.

No. 18-986 C

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
                                          \*
                                          \*
PARTNER 4 RECOVERY,                       \*
                                          \*
        Plaintiff,                        \*
                                          \*
v.                                        \*
                                          \*
THE UNITED STATES,                        \*
                                          \*
        Defendant,                        \*
                                          \*
and                                       \*
                                          \*
SERCO INC.,                               \*
                                          \*
        Defendant-Intervenor.             \*
                                          \*
                                          \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Kevin Paul Connelly**, Vedder Price, PC, Washington, D.C., Counsel for Plaintiff.

**Michael Damien Snyder**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**Sharon L. Larkin**, Larkin Ferrell, LLP, Washington, D.C., Counsel for Defendant-Intervenor.

No. 18-988 C

*******************************************
                                        *
                                        *
PARTNER 4 RECOVERY,                     *
                                        *
        Plaintiff,                      *
                                        *
v.                                      *
                                        *
THE UNITED STATES,                      *
                                        *
        Defendant,                      *
                                        *
and                                     *
                                        *
CH2M HILL – CDM PA TAC RECOVERY         *
SERVICES,                               *
                                        *
        Defendant-Intervenor.           *
                                        *
                                        *
*******************************************

**Kevin Paul Connelly**, Vedder Price, PC, Washington, D.C., Counsel for Plaintiff.

**Michael Damien Snyder**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**Robert J. Symon**, Bradley Arant Boult Cummings, LLP, Washington, D.C., Counsel for Defendant-Intervenor.


### MEMORANDUM OPINION AND FINAL ORDER GRANTING THE GOVERNMENT'S MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

**BRADEN**, *Senior Judge.*

        To facilitate a review of this Memoranda Opinion And Final Order concerning three different bid protests filed by the same plaintiff, in Case No. 18-985, in Case No. 18-986, and in Case. No. 18-988, the court has provided the following outline.

1

I.      RELEVANT FACTUAL BACKGROUND.

      A.      On May 1, 2017, The Federal Emergency Management Agency Issued A Request For Proposals For Public Assistance Contracts.

      B.      Zone 1 Of The Public Assistance Technical Assistance Contracts Program.
            1.      Factor 1 – Technical.
            2.      Factor 2 – Past Performance.
            3.      Factor 3 – Price.
            4.      The Source Selection Decision Document.

      C.      Zone 2 Of The Public Assistance Technical Assistance Contracts Program.
            1.      Factor 1 – Technical.
            2.      Factor 2 – Past Performance.
            3.      Factor 3 – Price.
            4.      Organizational Conflict Of Interest Investigation.
            5.      The Source Selection Decision Document.

      D.      Zone 3 Of The Public Assistance Technical Assistance Contracts Program.
            1.      Factor 1 – Technical.
            2.      Factor 2 – Past Performance.
            3.      Factor 3 – Price.
            4.      The Source Selection Decision Document.

      E.      On December 16, 2017, The Federal Emergency Management Agency Awarded Zone 1 To Fluor Enterprises, Inc., Zone 2 To Serco, Inc., And Zone 3 To CH2M Hill – CDM PA TAC Recovery Services.

II.     PROCEDURAL HISTORY.

      A.      Case No. 18-985.

      B.      Case No. 18-986.

      C.      Case No. 18-988.

III.    DISCUSSION.

      A.      Subject Matter Jurisdiction.

      B.      Standing.

      C.      Standard of Review.

D.   Case No. 18-985.
1.   Plaintiff's September 4, 2018 Amended Complaint.
2.   Plaintiff's Argument.
3.   The Government's Response.
4.   The Intervenor's Response.
5.   Plaintiff's Reply.
6.   The Government's Reply.
7.   The Intervenor's Reply.
8.   The Court's Resolution.

E.   Case No. 18-986.
1.   Plaintiff's September 4, 2018 Amended Complaint.
2.   Plaintiff's Argument.
3.   The Government's Response.
4.   The Intervenor's Response.
5.   Plaintiff's Reply.
6.   The Government's Reply.
7.   The Intervenor's Reply.
8.   The Court's Resolution.

F.   Case No. 18-988.
1.   Plaintiff's September 4, 2018 Amended Complaint.
2.   Plaintiff's Argument.
3.   The Government's Response.
4.   The Intervenor's Response.
5.   Plaintiff's Reply.
6.   The Government's Reply.
7.   The Intervenor's Reply.
8.   The Court's Resolution.

IV.   CONCLUSION.

In addition, the court has provided a list of the acronyms that appear in the parties' briefs and this Memorandum Opinion And Final Order.

CLINS: Contract Line Item Numbers;
CM: Contract Manager;
CO: Contracting Officer;
CPARS: Contractor Performance Assessment Reports;
DPM: Deputy Program Manager;
DRM: Deployment Readiness Manager;
FEMA: Federal Emergency Management Agency;
IGCE: Independent Government Cost Estimate;
OCC:  Federal Emergency Management Agency Office of Chief Counsel;
PA: Public Assistance;

PA-TAC: Public Assistance Technical Assistance Contracts;
PM: Program Manager;
PPIRS: Past Performance Information Retrieval System;
PPQ: Past Performance Questionnaire;
PWS: Performance Work Statement;
RFP: Request for Proposals;
SSA: Source Selection Authority;
SSDD: Source Selection Decision Document;
SSEB: Source Selection Evaluation Board;
TER: Technical Evaluation Report;
TET: Technical Evaluation Team;
TM: Task Manager;
TO: Task Order.

I.   **RELEVANT FACTUAL BACKGROUND.[1]**

   A.   **On May 1, 2017, The Federal Emergency Management Agency Issued A Request For Proposals For Public Assistance Contracts.**

   On May 1, 2017, the Federal Emergency Management Agency ("FEMA") issued Request for Proposals No. HSFE80-17-R-0004 ("RFP") for three Public Assistance Technical Assistance Contracts ("PA-TAC") IV. [2]   *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 256.  The goal of the PA-TAC IV Contracts was to provide supplemental resources needed to implement the Public Assistance ("PA") program for major disasters and emergencies.  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 267.  To "effectively provide resource support, FEMA . . . identif[ied] three geographical zones based on a historical workload assessment."  *See e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 267.

---

[1] The facts recited herein were derived from the Corrected Administrative Records in Case No. 18-985 (ECF No. 31, Tabs 1–86, AR 1–2331); Case No. 18-986 (ECF No. 29, Tabs 1–85, AR 1-2328), and Case No. 18-988 (ECF No. 28, Tabs 1–73, AR 1-2596).

[2] The PA-TAC IV is a follow-on program for the predecessor PA-TAC III program.  Case No. 18-985, ECF No. 31, Tab 5, AR 261.  Under the prior program, *i.e.*, PA-TAC III, the contractors operated nationwide, but this structure resulted in major delays in providing "necessary resources to disaster field operations."  Case No. 18-985, ECF No. 31, Tab 5, AR 267.

Each of these three zones and the geographic area covered by designated FEMA regions, was set forth in the following image, that was included in the RFP:



*See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 267.

The new PA-TAC IV Contracts included "one procurement package to solicit non-professional and professional services in an Advisory and Assistance Services (["]A&AS["]) capacity[,]" for each of the three zones.  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 261. The RFP stated that a hybrid indefinite delivery-indefinite quantity ("IDIQ") contract would be awarded for each zone, with: firm-fixed-price ("FFP"); time and materials ("T&M"); and cost reimbursement ("CR") contract line item numbers ("CLINS").  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 261.  The RFP estimated a price ceiling of $610 million for each PA-TAC IV Contract, with a base term of one year and four option one year periods.  *See e.g.*, Case No, 18-985 ECF No. 31, Tab 5, AR 257, 261.  The awardee for each contract and corresponding zone was to be responsible for "the resource requirements for major disasters and emergencies declared within that geographic zone."  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 267.

The RFP allowed offerors to submit proposals for one or more zones, but required offerors to submit separate proposal packages for each zone.  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 329.  Each proposal package was required to include five volumes: Volume I – Relevant Experience; Volume II – Technical; Volume III – Past Performance; Volume IV – Price; Volume V – Standard Forms and Other Submittals.  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 324.  Contracts were to be awarded, "based on proposals that [were] determined to provide the best value as a whole to the Government with appropriate consideration given to [] three (3) evaluation

factors:" (1) Technical; (2) Past Performance; and (3) Price.[3]  *See, e.g.*, Case No. 18-985, ECF No. 31 Tab 5, AR 329.  The RFP established an "[o]rder of [i]mportance" for, each of these evaluation factors:

> Factor 1 when combined is significantly more important than Factor 2.  Factor 2 is significantly more important than Factor 3.  When Factors 1 and 2 are combined they are significantly more important than Factor 3.  Offerors are ineligible for award if they are rated "Fail" on Volume I – Relevant Experience; or rated "Unacceptable" for any [S]ub[-]factor under Factor 1; or "No Confidence" under Factor 2.

*See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 329 (emphasis deleted).

Importantly, FEMA's Source Selection Authority ("SSA") was not required "to award to the [o]fferor(s) submitting the lowest priced proposal or to the [o]fferor(s) submitting the highest technically rated proposals." *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 329.  Instead, FEMA's Source Selection Evaluation Board ("SSEB"), acting through the Technical Evaluation Team ("TET"), first would evaluate Volume I – Relevant Experience, on a pass/fail basis, to determine whether an offeror "performed within 5 years as a prime or subcontractor that [was] relevant to the PA[-]TAC[-]IV in terms of size, scope, complexity, and type." *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 330.

Second, the SSEB, through the TET, would evaluate Volume II – Technical, based on its "achievability, capability, innovativeness, and relevance in accomplishing the tasks relating to the [Performance Work Statement ("PWS")]." *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 331.  Volume II must demonstrate: "[a]n accomplishable technical and management approach;" "[s]oundness and clarity of the approach;" "capability to perform the requirements as outlined in the PWS with minimal risk;" and "[i]nnovative and cost effective ideas." *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 331.  Factor 1 – Technical was relevant in the evaluation of Volume II, including three Sub-factors: (1) Technical and Management Approach and Capabilities; (2) Key Personnel; and (3) Quality Control Plan.  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 331.  The RFP stated that the SSEB would rate Volume II by one of the following adjectives: "Outstanding," "Very Good," "Acceptable," "Marginal," or "Unacceptable." *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 332.

Third, the SSEB, through the TET, would evaluate Volume III – Past Performance "to ascertain the probability of successfully performing the required efforts of the [PWS]." *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 332.  Three references were required to verify that an "[o]fferor performed as the prime contractor within five (5) years from the issue date of [the RFP,] . . . focus[ing] on requirements, including contract description, contract objectives, contract type, price, final price, and period of performance." *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 332.  Relevancy would be rated as "Very Relevant," "Relevant," "Somewhat Relevant," or "Not Relevant." *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 333.  The assigned Past Performance rating reflected "the level at which the Government is confident the offeror will

---

[3] The evaluation factors were to be discussed in: Volume II as to Factor 1 (Technical); Volume III as to Factor 2 (Past Performance); and Volume IV as to Factor 3 (Price). *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 330.

successfully perform at the required level of effort for the current acquisition." *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 333.   The rating options were: "Substantial Confidence," "Satisfactory Confidence," "Limited Confidence," "No Confidence," or "Unknown Confidence." *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 333.   The RFP indicated that "[t]he more relevant the performance . . . , the more significant it becomes to the confidence rating." *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 333.

Finally, the SSEB would evaluate Volume IV – Price "for fairness and reasonableness[,]" separately from the Technical Proposals, "by one or more of the following techniques . . . :" (1) "[c]omparison of proposed costs/prices received in response to the [RFP];" (2) "[c]omparison of proposed costs/prices with the Independent Government Cost Estimate [("IGCE")];" (3) "[c]omparison of proposed costs/prices with available historical information;" and (4) "[c]omparison of proposed costs/prices with resources proposed." *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 334.

**B.     Zone 1 Of The Public Assistance Technical Assistance Contracts Program.**

On June 1, 2017, Partner 4 Recovery ("P4R") submitted a timely proposal for Zone 1 of the PA-TAC IV Program.   Case No. 18-985, ECF No. 31, Tab 7, AR 464.   That same day, Fluor Enterprises, Inc. ("Fluor") also submitted a timely proposal for Zone 1 of the PA-TAC IV Program. Case No. 18-985, ECF No. 31, Tab 23, AR 984.

**1.     Factor 1 – Technical.**

Under the Technical Factor, the TET rated P4R as follows:

- Sub-factor 1 – Technical and Management Approach and Capabilities: "Acceptable;"

- Sub-factor 2 – Key Personnel: "Very Good;"

- Sub-factor 3 – Quality Control Plan: "Acceptable;" and

- Overall Technical: "Acceptable."

Case No. 18-985, ECF No. 31 Tab 42, AR 1471.

Under the Technical Factor, the SSEB rated Fluor as follows:

- Sub-factor 1 – Technical and Management Approach and Capabilities: "Very Good;"

-  Sub-factor 2 – Key Personnel: "Very Good;"

- Sub-factor 3 – Quality Control Plan: "Very Good;" and

- Overall Technical: "Very Good."

Case No. 18-985, ECF No. 31, Tab 42, AR 1471.

Regarding Sub-factor 1, the TET assigned a weakness to P4R for decision making communications, because P4R did "not define [the] frequency of communication which may affect the management and quality of contact performance[.]"  Case No. 18-985, ECF No. 31, Tab 59, AR 2223.  P4R's proposal stated that the "Program Manager [("PM")] engages the Task Monitor 'periodically[,]'" without defining "periodically[;]"  P4R did not "define the frequency of receiving feedback from [the] FEMA T[ask Monitor;]" and,  although P4R's proposal identified the "███████████████████ as the single point of contact for the FEMA Task Monitor . . . [, P4R identified] the PM [a]s also engaging the FEMA Task Monitor . . . result[ing] in unclear and duplicative [points of contact]."  Case No. 18-985, ECF No. 31, Tab 59, 2223.

Also regarding Sub-factor 1, the TET assigned P4R a strength for being able to work jointly with FEMA, based on P4R "providing contract support to PA[-]TAC for over 35 years for various programs and execut[ing] thousands of PA-TAC task orders at the field and Headquarters level."  Case No. 18-985, ECF No. 31, Tab 59, AR 2221.

In contrast, regarding Sub-factor 1, the TET found that Fluor's proposal "describe[ed] its key personnel responsibilities and detail[ed] who[m] within FEMA each will communicate."  Case No. 18-985, ECF No. 31, Tab 59, AR 2204.  Fluor also provided a chart showing the key personnel who would interact with FEMA.  Case No. 18-985, ECF No. 31, Tab 23, AR 991.  And, Fluor's proposal provided a breakdown of the specific communication roles and responsibilities of each key personnel.  Case No. 18-985, ECF No. 31, Tab, 23, AR 992.

Regarding Sub-factor 3, the TET assigned P4R a weakness, because in selecting staff for task orders, "the [PM], Deputy Program Manager [("DPM")], and Deployment Readiness Manager [("DRM") would] review the requirements of the assignment . . . and that the [PM] approves all candidates[,]" but P4R's proposal did not explain what happens, if each of these P4R employees "reviews the requirements differently, if at all, or whether the [DPM] and [DRM] submit a recommendation to the [PM] for concurrence."  Case No. 18-985, ECF No. 31, Tab 59, AR 2228.

In contrast, the TET found that Fluor "detail[ed] its process for [responding to task order proposal requests] including decision making authorities in each step and how it [would] ensure [a] quality response to meet the [G]overnment's requirements."  Case No. 18-985, ECF No. 31, Tab 59, AR 2207.  Fluor's proposal also stated that "[c]andidates [would be] rated and ranked . . . by the [DRM], who provides the analysis results to the PM and [DPM] for review and final selection."  Case No. 18-985, ECF No. 31, Tab 23, AR 1020.

Also regarding Sub-factor 3, the TET assigned a strength for P4R's proposed resources available to staff, including a ███████████████████, to "provide[]" ████████████ to a vast array of ████████████ within [P4R's] organization."  Case No. 18-985, ECF No. 31, Tab 59, AR 2227.

## 2.    Factor 2 – Past Performance.

The TET assigned both P4R and Fluor a rating of "Substantial Confidence" for Past Performance, based on the three contract references submitted with their proposals.  Case No. 18-985, ECF No. 31, Tab 59, AR 2168.

The Technical Evaluation Report ("TER") states that Fluor "provided 3 Past Performance examples for PA-TAC III Task Orders in Zone 1 . . . provid[ing] professional and non-professional staff on 30 task orders in 12 states located in Zone 1."[4]  Case No. 18-985, ECF No. 31, Tab 59, AR 2210.  These contracts consisted of three Task Orders ("TOs") performed under the PA-TAC III contract.  Case No. 18-985, ECF No. 31, Tab 44b, AR 1773.  The Contractor Performance Assessment Reports ("CPARS") contained in the Past Performance Information Retrieval System ("PPIRS")[5] reflected "Satisfactory" ratings in all areas of review for each of Fluor's three references.  Case No. 18-985, ECF No. 31, Tab 59, AR 2210–11.

The TER also described each project's significant strengths and strengths, and found no weaknesses or significant weaknesses.  Case No. 18-985, ECF No. 31, Tab 59, AR 2212–14.  The TER concluded that Fluor's Past Performance

> is the same as the requirements in the PWS. In each of the past performance examples, the offeror provided technical expertise to develop PWS and perform special considerations reviews.  The offeror provided specific examples on how their work benefited the government.  For example, for a Texas task order, the offeror noticed inconsistent[] approach[es] through the state. They created a white paper suggesting a method to []consisten[tly] apply PA recovery efforts throughout state. This was widely received and brought a consistent approach to reviews, results and metric in the performance response.  The Government has a high expectation that the offeror will be able to successfully perform all the duties/tasks of the PA-TAC IV Program.

Case No. 18-985, ECF No. 31, Tab 59, AR 2215.

### 3.      Factor 3 – Price.

P4R's price was $399,355,561.53; Fluor's was $609,984,407.29.  Case No. 18-985 ECF No. 31, Tab 51, AR 2085.  FEMA's Contracting Officer ("CO") found that "[a]ll offers [were] below the IGCE value of $610M for a [five] year period of performance."  Case No. 18-985, ECF No. 31, Tab 13, AR 663.  In determining P4R and Fluor's prices, FEMA used plug numbers for CLINs 0003 and 0004 of $197,002,049.71 and $378,284.41.  Case No. 18-985 ECF No. 31, Tab 13, AR 662.  The IGCE was $610,395,542.77, but was calculated using the plug number for CLIN 0003 and $19,701,182.67 for CLIN 0004.  Case No. 18-985, ECF No. 31, Tab 13, AR 662.  The CO found that there was "[p]rice disparity between the lowest ([P4R]) and the highest ([Fluor]) [of] approximately 41.7 percent."  Case No. 18-985, ECF No. 31, Tab 13, AR 663.  The CO also found

---

[4] Two of these contract references were performed in Zone 2.  Case No. 18-985, ECF No. 31, Tab 44b, AR 1773.

[5] The RFP states that "FEMA will use [an] in-house form identified as the Technical Evaluation Worksheet . . . as the mechanism to conduct performance evaluation, which will be used to input data into the [CPARS] for evaluation reports in the Government-wide website [PPIRS]."  Case No. 18-985, ECF No. 31, Tab 5; AR 289.

that "[p]rice disparity between the low bidder and the next low bidder does not exceed a bid margin greater than 20 percent."  Case No. 18-985, ECF No. 31, Tab 13, AR 663.

### 4.    The Source Selection Decision Document.

The Source Selection Decision Document ("SSDD") contained a page and a half of tradeoff analyses discussing the strengths and weaknesses of P4R and Fluor's proposals.  As to Factor 1, including the three Sub-factors, the SSDD in detail reported the greater benefits of Fluor's proposal, in part, stating that "[Fluor]'s proposal provided the Government with Significant Strengths that will provide more value to the Government."  Case No. 18-985, ECF No. 31, Tab 42, AR 1495–96.

As to Factor 2, the SSDD reported that

[b]oth offerors received a Past Performance rating of Substantial Confidence demonstrating they both have extensive relevant experience to perform the requirements under PA-TAC IV.  Both offerors had [P]ast [P]erformance questionnaire ("PPQ")[6] ratings of Outstanding and none had any associated weaknesses under this factor.

Case No. 18-985, ECF No. 31, Tab 42, AR 1496–97.

The SSDD's price analysis concluded:

Although both offerors had the same [P]ast [P]erformance rating, and [P4R] is lower priced, the strengths and weaknesses associated with [Fluor]'s proposal under Factor 1 in comparison to the strengths and weaknesses associated with [P4R]'s proposal justify paying the higher price.  [Fluor] clearly provides a superior benefit to the Government in terms of demonstrating an in depth understanding of the solicitation requirements, presenting key personnel with zone knowledge, and experience that will benefit the Government starting at day 1; and a quality control plan that will compliment FEMA deliverables with minimal weaknesses.  Based on my assessment, there is no uncertainty that [Fluor]'s proposal when compared to [P4R] will deliver immediate benefits to the Government with minimum risk that warrant the additional costs.

Case No. 18-985, ECF No. 31, Tab 42, AR 1497.[7]

---

[6] The RFP states that "it is the [o]fferor's responsibility to ensure the [PPQs] are submitted not later than the proposal due date and time."  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 332.

[7] The SSDD also included a tradeoff between Fluor and Offeror 3, both of whom were rated "Very Good" for all three Factor 1 Sub-factors and "Substantial Confidence" in Factor 2, by: (1) evaluating the technical components of each proposal and finding greater benefit from Fluor's; and (2) scrutinizing their Past Performance contracts and finding greater benefit from Fluor's.  Case

### C.      Zone 2 Of The Public Assistance Technical Assistance Contracts Program.

On June 1, 2017, P4R submitted a timely proposal for Zone 2 of the PA-TAC IV Program. Case No. 18-986, ECF No. 29, Tab 7, AR 472.  On June 1, 2017, Serco Inc. ("Serco") also submitted a timely proposal for Zone 2.  Case No. 18-986, ECF No. 29, Tab 18, AR 852.

#### 1.      Factor 1 – Technical.

Under the Technical Factor, the TET rated P4R as follows:

- Sub-factor 1 – Technical and Management Approach and Capabilities: "Very Good;"

- Sub-factor 2 – Key Personnel: "Marginal;"

- Sub-factor 3 – Quality Control Plan: "Acceptable;" and

- Overall Technical: "Acceptable."

Case No. 18-986, ECF No. 29, Tab 49, AR 1576, 1579, 1585, 1588.

Under the Technical Factor, the TET rated Serco as follows:

- Sub-factor 1 – Technical and Management Approach and Capabilities: "Very Good;"

- Sub-factor 2 – Key Personnel: "Very Good;"

- Sub-factor 3 – Quality Control Plan: "Very Good;" and

---

No. 18-985, ECF No. 31, Tab 42, AR 1490–92.  The SSDD's price analysis between Fluor and Offeror 3 concluded:

> [Fluor]'s price proposal in the amount of $609,984,407.29 is approximately $132M higher than the next best technical offeror's (Offeror 3) price proposal over the course of the 5 year period of performance.  [Fluor]'s price proposal; the combination of its [T]echnical and [P]ast [P]erformance clearly provides a superior benefit to the Government in terms of demonstrating an in depth understanding of the solicitation requirements, presenting key personnel with extensive magnitude of experience that will benefit the Government starting at day 1; and a quality control plan that will compliment FEMA deliverables.  Based on my assessment, there is no uncertainty that [Fluor]'s proposal when compared to Offeror 3 will deliver immediate benefits to the Government with minimum risk and added value that warrant the additional costs.

Case No. 18-985, ECF No. 31, Tab 42, AR 1491–92.

- Overall Technical: "Very Good."

Case No. 18-986, ECF No. 29, Tab 49, AR 1576, 1580, 1585, 1588.

Both P4R and Serco initially were rated differently by evaluators, as is reflected in handwritten comments on the TET worksheets.  Case No. 18-986, ECF No. 29, Tabs 53, 54. Initially, P4R received an "Acceptable" rating for Sub-factor 2; Serco received "Acceptable" ratings for Sub-factors 2 and 3, and an "Acceptable" rating overall.  Case No. 18-986, ECF No. 29, Tab 53, AR 1963, 1966, 1983; Tab 54, AR 2027.  These ratings were changed "[b]ased on [c]omments by [the FEMA Office of Chief Counsel ("OCC")], the CO, [and] upon further evaluation of the proposal[s.]"[8]  Case No. 18-986, ECF No. 43-1 at 2, AR 2345.

---

[8] This information is derived from two documents that inadvertently were not included in the Administrative Record and are the subject of the Government's October 10, 2018 Motion To File Corrected Administrative Record and P4R's October 16, 2018 Motion To Supplement The Administrative Record, To Amend The Court's Scheduling Order And For Costs/Fees and a Response In Opposition to Government's Third Motion To File Corrected Administrative Record. Case No. 18-986, ECF Nos. 43, 46.

The Government argues that these documents should have been included in the Administrative Record, and "[w]hile nearly all of the content . . . is already in the [A]dministrative [R]ecord, under Tab 55 (the final [TER]), the two attached documents do provide additional context for certain technical ratings."  Case No. 18-986, ECF No. 43 at 1.

P4R responds that these two documents "reflect full-scale changes to FEMA's [T]echnical [E]valuation of both P4R and Serco[,]" "raise a number of questions that should have been addressed in the briefing of this case and suggest that there are numerous documents missing from the record that shed light on what led to the [TET] revising Serco's and P4R's assessments and ratings months after the initial evaluation[.]"  Case No. 18-986, ECF No. 46 at 10, 12–13.  In the alternative, P4R does not oppose supplementing the Administrative Record with these documents, but argues that the court also should allow the depositions of the CO and the TET, amend the schedule to allow re-briefing, and award attorney costs/fees.  Case No. 18-986, ECF No. 46 at 11, 14, 16.

The Government replies that P4R has not met its burden to show how effective judicial review is not possible without amending the Administrative Record and that the other requested relief is unnecessary in light of the October 22, 2018 Joseph Declaration, the CO.  Case No. 18-986, ECF No. 53 at 2, 5; ECF No. 53-1.  The October 22, 2018 Joseph Declaration explains that the CO included the two documents in the electronic folder for Zone 2 and forwarded to FEMA's counsel, but that they inadvertently were not included in the files transferred to the Government's counsel.  Case No. 18-986, ECF No. 53-1 at 1–2.

P4R replies that the errors "on the part of the Government to prepare an adequate record [] raise concerns about the efficacy of the CO's process of compiling the record, the care paid to its accuracy, and whether it ultimately is complete."  Case No. 18-986, ECF No. 57 at 11.

Regarding Sub-factor 2, the TET assigned Serco a significant strength, because the PM "held previous leadership positions with FEMA, and demonstrates program management experience for the PA program . . . having worked in all 3 Regions located in Zone 2." Case No. 18-986, ECF No. 29, Tab 49, AR 1585. The TET assigned P4R a strength for P4R's PM who had "22 years of experience with the PA[-]TAC contract to include management of 298 task orders of which 100 were located in Zone 2." Case No. 18-986, ECF No. 29, Tab 49, AR 1585. But the TET assigned P4R a significant weakness, because P4R's DRM did not meet the PWS education requirement, *i.e.*, he did not have "a four (4) year degree in business management or business administration or a related technical field." Case No. 18-986, ECF No. 29, Tab 5, AR 277; Tab 65,

────────────────────────

On November 13, 2018, the court convened a Status Conference to address these arguments (11/13/2018 TR 1–27). Therein, the court questioned the CO and FEMA counsel about the process of compiling the Administrative Record (11/13/2018 TR 10–14), directed the Government to provide a document containing comments from the OCC, that the Government claimed was privileged, for *in camera* review (11/13/2018 TR 15), and directed the parties to submit chronologies regarding the Technical evaluation (11/13/2018 TR 19). FEMA counsel affirmed that she went "through and looked at the folders and the subfolders to ensure that all the relevant documents have been included in the file and [that she has] not discovered any new documents that were inadvertently left out[.]" 11/13/2018 TR 13. The Government's counsel also confirmed that no other documents were missing. 11/13/2018 TR 15.

On November 13, 2018, the Government provided the document from the OCC to the court for *in camera* review. On November 29, 2018, the Government filed a November 29, 2018 Affidavit of Hilary Freund, an Attorney-Advisor in FEMA's OCC. Case No. 18-986, ECF No. 69-1. The November 29, 2018 Freund Affidavit states that the document was authored by FEMA counsel and provided to the CO and the TET. Case No. 18-986, ECF No. 69-1 at 1. Based on the court's *in camera* review and the November 29, 2018 Freund Affidavit, the court finds that the document is subject to the attorney-client privilege.

The United States Court of Appeals for the Federal Circuit has held that the Administrative Record "should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the [Administrative Procedure Act] . . . in order not to 'frustrate effective judicial review.'" *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (quoting *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973)).

In this case, one of P4R's claims is that the TET's Technical evaluations were arbitrary and capricious. Case No. 18-986, Am. Compl. ¶¶ 119–159. The court finds that including these documents is necessary to permit meaningful review, because without them the court cannot determine why the Technical Factor ratings were changed. The court, however, is not persuaded that the other relief P4R seeks is appropriate, based upon: (1) the October 22, 2018 Joseph Declaration (Case No. 18-986, ECF No. 53-1); (2) answers provided by the CO and FEMA counsel during the November 13, 2018 Status Conference (11/13/2018 TR 10–14); (3) *in camera* review of the OCC document; and (4) chronologies submitted by the Government and P4R as to the Technical Evaluation (Case No. 18-986, ECF Nos. 61, 62). Accordingly, P4R's October 16, 2018 Motion is granted, in part, and denied, in part.

13

AR 2252. In contrast, the TET assigned Serco's DRM a significant strength for "exceed[ing] the education [requirement] with a [Master of Science] in Information Systems, [a Master of Science] in National Resource Strategy[,] and a [Bachelor of Science in] Computer Science." Case No. 18-986, ECF No. 29, Tab 65, AR 2259.

Next, the TET assigned P4R a significant weakness for not complying with the PWS requirement that the DPM "have a minimum of 10 years of experience performing program management functions." Case No. 18-986, ECF No. 29, Tab 5, AR 277. Specifically, the TET found that the DPM's former positions listed on her resume did "not reflect the experience of performing management experience as needed[.]" Case No. 18-986, ECF No. 29, Tab 65, AR 2251-52.

The TET also assigned P4R's Contract Manager ("CM") a significant weakness, because his ███████████████████████████ did not meet the required 24 semester hours in one of the permitted fields of "accounting, business, finance, law, contracts, purchasing, economics, industrial management, marketing, quantitative methods, or organization and management[,]" and his resume generically only stated he had the required 120 hours of continuing professional education, without listing the actual credit hours earned in each course. Case No. 18-986, ECF No. 29, Tab 5, AR 277; Tab 65, AR 2252.

Regarding Sub-factor 3, the TET assigned P4R a strength for staffing, because P4R planned to use "████████████████ to promote long-term commitment, . . . ████████████ that understand the applicant and regional conditions and ████████████████ in a ██████ ████████ to insure quality service and deliverables[.]" Case No. 18-986, ECF No. 29, Tab 65, AR 2252. Likewise, the TET assigned P4R a strength for programmatic and technical resources, including "



." Case No. 18-986, ECF No. 29, Tab 65, AR 2252.

## 2.    Factor 2 – Past Performance.

The TET assigned both P4R and Serco a "Substantial Confidence" rating for Past Performance. Case No. 18-986, ECF No. 29, Tab 65, AR 2211. Pursuant to the RFP, P4R and Serco submitted three contract references. Case No. 18-986, ECF No. 29, Tab 65, AR 2253, 2262. For both P4R and Serco, the TET found two of their references "Very Relevant" and one "Relevant." Case No. 18-986, ECF No. 29, Tab 65, AR 2253–54, 2261–63.

In addition, the TET found that Serco "demonstrate[ed] a history of maintaining a large pool of professional and non-professional staff ready for deployment to provide complex contract administration service." Case No. 18-986, ECF No. 29, Tab 65, AR 2261–2. For each of Serco's projects, the TER documented the type of work performed, identified the workforce, and determined the relation to the PA-TAC IV Program. Case No. 18-986, ECF No. 29, Tab 65, AR 2262–63.

In addition, the TER documented: (1) the strengths of each project with no listed weaknesses; (2) the PPQ ratings of three "Outstanding" and one "Good" rating; and (3) the "Very

14

Good" ratings with one "Exceptional" rating under the PPRIS.  Case No. 18-986, ECF No. 29, Tab 65, AR 2262–63.

### 3.     Factor 3 – Price.

The SSDD reported that "[a]ll offers are below the IGCE value of $610M for the 5 year period of performance."  Case No. 18-986, ECF No. 29, Tab 49, AR 1593.  P4R's price was $398,320,078.69; Serco's was $533,519,196.55 or $135,199,117.86 higher than P4R's and approximately $76M lower than the IGCE.  Case No. 18-986, ECF No. 29, Tab 49, AR 1593.

### 4.     Organizational Conflict Of Interest Investigation.

On March 1, 2017, ████████, the Project Manager for Serco, sent an email to an acquaintance asking: "is AECOM[9] planning to re compete for the FEMA PA TAC contract - ?  I was the guy that designed and implemented the new model they are contracting for ?  any opportunity / interest to join forces ? – I know the questions and the answers !!!! ☺"  Case No. 18-986, ECF No. 29, Tab 27, AR 906.

In June of 2017, the CO requested that FEMA's legal counsel investigate whether ████ ████ presented an Organizational Conflict of Interest ("OCI"), because he was a FEMA employee from December 2009 to July 2016, most recently as Senior Program Manager of the Public Assistance Implementation Team in Washington, D.C.  Case No. 18-986, ECF No. 29, Tab 24, AR 894-897.  In that role, ████████ oversaw recovery efforts in Oregon under a pilot program.  Case No. 18-986, ECF No. 29, Tab 24, AR 897.

On February 8, 2018, the CO sent a letter to Serco asking: (1) "What were ████ ████ roles and responsibilities at Serco from May 2017 thr[ough] January 2018?[;]" (2) "Did ████ participate or assist Serco in submitting its proposal . . .?[;]" and (3) "What steps, if any, did Serco take to firewall ████████ from this procurement?"  Case No. 18-986, ECF No. 29, Tab 24, AR 895.

FEMA also sent an inquiry to the Chief of Contracts and Financial Management Branch of the Public Assistance Division, who responded: "I do not believe an [OCI] exists with respect to Serco [] proposing as its [PM] former FEMA employee [████████]."  Case No. 18-986, ECF No. 29, Tab 24, AR 896.

On February 16, 2018, Serco responded to the CO's February 8, 2018 letter:

████████ did not participate in the proposal drafting efforts.  Rather, during this time, ████████ was working on responding to a Request for Information in connection with an Army opportunity unrelated to FEMA or this solicitation.  ████ ████████ contribution to Serco's PA[-]TAC IV proposal was limited.  ████ was requested to provide his resume for inclusion into the proposal, he participated as one of the members of the management team to interview candidates for the [DPM] position under the [RFP], and he worked with Serco's subcontracting

---

[9] Presumably "AECOM" refers to one of the two member companies of P4R, a joint venture. *See* Case No. 18-986, ECF No. 29, Tab 7, AR 473.

department to contract with small businesses and teaming partners for support of the contract.  None of these duties are unique to a particular employee or opportunity and is a standard practice within our firm.  Given there is no actual or potential OCI arising out of his prior work with FEMA, ██████████ was not firewalled from the FEMA solicitation as there was no reason to do so.

Case No. 18-986, ECF No. 29, Tab 24, AR 897.

Serco's response also stated that: "██████████ had no involvement in any of the PA[-]TAC contracts[,] . . . was not involved in the development of any PA[-]TAC requirements or the source selection of any PA[-]TAC awards[, and] he did not manage or oversee performance of any of the PA[-]TAC contracts[.]"  Case No. 18-986, ECF No. 29, Tab 24, AR 898–.

FEMA's CO determined that there was no "existence of conflicting roles that might bias a contractor's judgment, or [for] unfair competitive advantage," because ██████████ was not "involved with the acquisition process of PA[-]TAC IV requirements and/or documentation[, nor] . . . privy to any sensitive information regarding source selection[.]"  Case No. 18-986, ECF No. 29, Tab 24, AR 898.

### 5.    The Source Selection Decision Document.

The SSDD contains a two-page tradeoff analysis between P4R and Serco.  Case No. 18-986, ECF No. 29, Tab 49, AR 1597–99.  The Factor 1 tradeoff considered the three Sub-factors and in detail reported the greater benefits of Serco's proposal.  Case No. 18-986, ECF No. 29, Tab 49, AR 1597–99.

As to Past Performance, the SSDD tradeoff analysis represented that

[b]oth offerors were rated [S]ubstantial [C]onfidence for [P]ast [P]erformance.  Both offerors provided projects that were either very relevant or relevant to the PA-TAC IV requirements and neither offeror had weaknesses under Factor 2.  For the PPQs received for each [o]fferor, each offeror received an Outstanding [rating in] all categories except [Serco] received a Good rating in one category.

Case No. 18-986, ECF No. 29, Tab 49, AR 1599.

And, regarding price, the SSDD stated:

Although [Serco]'s price is higher than [P4R] who is the lowest priced offeror, given the fact that [Serco] has very highly qualified key personnel, compared to [P4R]'s underqualified employees as well as the other associated strengths and weaknesses when compared to one another, [Serco]'s proposal merits paying the price premium.

Case No. 18-986, ECF No. 29, Tab 49, AR 1599.

16

Therefore, the SSDD concluded that

> after a comprehensive review of both the risk and confidence associated with all [o]fferors across the spectrum of evaluation Factors and Sub[-]factors[,] I have determined that it is in the Government's best interest to award the PA[-]TAC IV - Zone 2 contract to [Serco] in the amount of $533,519,196.55.

Case No. 18-986, ECF No. 29, Tab 49, AR 1602.

### D.   Zone 3 Of The Public Assistance Technical Assistance Contracts Program.

On June 1, 2017, P4R submitted a timely proposal for Zone 3 of the PA-TAC IV Program. Case No. 18-988, ECF No. 28, Tab 7, AR 453.   On June 1, 2017, CH2M Hill – CMPA TAC Recovery Service ("CCPRS") submitted a timely proposal for Zone 3 of the PA-TAC IV Program. Case No. 18-988, ECF No. 28, Tab 23, AR 909.

### 1.   Factor 1 – Technical.

Under the Technical Factor, the TET rated P4R as follows:

- Sub-factor 1 – Technical and Management Approach and Capabilities: "Acceptable;"

- Sub-factor 2 – Key Personnel: "Acceptable;"

- Sub-factor 3 – Quality Control Plan: "Acceptable;" and

- Overall Technical: "Acceptable."

Case No. 18-988, ECF No. 28, Tab 53, AR 2480.

Under the Technical Factor, the TET rated CCPRS as follows:

- Sub-factor 1 – Technical and Management Approach and Capabilities: "Very Good;"

- Sub-factor 2 – Key Personnel: "Very Good;"

- Sub-factor 3 – Quality Control Plan: "Very Good;" and

- Overall Technical: "Very Good."

Case No. 18-988, ECF No. 28, Tab 53, AR 2480.

17

Under Sub-factor 1, the TET assigned P4R a weakness for a lack of detail and vague descriptions of communications with FEMA staff:

> The [PM] engages the [TM] "periodically"; [P4R] communicates "regularly" to its task order teams and non-deployed staff to disseminate information about the contract; the ████████████ coordinate "regularly" with FEMA to assess performance; [PM] performs "regular" visits with [the TM], with no discussion of what periodically or regularly consists of.

Case No. 18-988, ECF No. 28, Tab 53, AR 2531.

The TET did not assign CCPRS a similar weakness for Sub-factor 1, because

> [CCPRS's] DRM will continue communicating with [CCPRS's] teaming partners through newsletters, quarterly call, and targeted recruiting requests. . . . The TO PM checks in frequently and meets quarterly with the FEMA TM to more closely monitor budget, schedule, and quality. . . . The TO PM also reports to the DPgM weekly on the status of these items during our recurring operations calls.

Case No. 18-988, ECF No. 28, Tab 23, AR 915, 922.

Under Sub-factor 1, the TET also assigned P4R a strength for training, because

> [P4R's strategy] includes delivering training using PA-experienced trainers . . . who have previously delivered PA courses for FEMA.  They will cross train their staff . . . to promote readiness and deployment.  This will help ensure that [P4R] will maintain a pool of qualified and trained staff[.  P4R] will deliver refresher training and updates on program training using a combination of classroom and remote methods.  Remote methods include the use of their cloud based, mobile friendly training platform that offers more than 5,000 courses to its employees[.]

Case No. 18-988, ECF No. 28, Tab 53, AR 2531.

But, the TET assigned CCPRS a significant strength, because

> [CCPRS]'s training strategy incorporates the use of FEMA developed programmatic materials, recommended PA coursework, and offeror developed training.  [CCPRS] developed their own training platform (CFIT) to provide training to FEMA and their staff to include a customer service component.  They have developed an individual training plan for each candidate to ensure standards are maintained.  They also plan to use various modes of training to include classroom as well as cost saving methods (i.e. web based and just-in-time training).  A unique, innovative training approach is the use of "YouTube" to educate its staff about FEMA's PA-TAC program[.]

Case No. 18-988, ECF No. 28, Tab 53, AR 2496.

In addition, the TET assigned P4R a strength for the ability "to partner with FEMA, having provided contract support to the PA Program under the PA-TAC contracts since 1995."  Case No.

18-988, ECF No. 28, Tab 53, AR 2530.  But, the TET assigned P4R a weakness for Sub-factor 1, because

> [a]lthough [P4R] denotes that they have ███ total personnel, they do not list the staff by labor category . . . [and] did not identify whether the candidates met the requisite education and experience requirements under 1.4.2 of the PWS.[10]

Case No. 18-988, ECF No. 28, Tab 53, AR 2531.

The TET assigned CCPRS a similar weakness under Sub-factor 1 for not "notat[ing] in the proposal the qualification of the 400 field staff, as required per Section 1.4.2 in the PWS."  Case No. 18-988, ECF No. 28, Tab 53, AR 2497.

Regarding Sub-factor 2, the TET assigned P4R a significant weakness for DRM, stating

> [a]lthough [P4R's] proposed DRM has over 15 years of experience assisting in large infrastructure construction management projects, she has no relevant experience related to the DRM position as required in the PWS.  Most of the experience is with scheduling and tracking, providing minimal comparison to quantitative and qualitative requirements as it relates to deployment of staff and deployment readiness.  Only noted experience as it relates to the zone (Region 2) was work for the U.S. Department of Housing and Urban Development Community Block Grants[.] . . . The DRM's lack of experience and knowledge of the Regions in Zone 3 is a risk to the [G]overnment in her ability to successfully perform her duties.

Case No. 18-988, ECF No. 28, Tab 53, AR 2533.

The TET assigned CCPRS a significant strengths for PM, DPM, and CM's experience exceeding the RFP requirements.  Case No. 18-988, ECF No. 28, Tab 53, AR 2497–98.

Regarding Sub-factor 3, the TET assigned P4R a strength for the internal staffing plan "provid[ing] training and mentoring as needed to keep abreast of program and policy mentoring and changes."  Case No. 18-988, ECF No. 28, Tab 53, AR 2534.

## 2.    Factor 2 – Past Performance.

The TET assigned both P4R and CCPRS a "Substantial Confidence" rating for Past Performance.  Case No. 18-988, ECF No. 28, Tab 53, AR 2480.  Both P4R and CCPRS submitted three contract references in their proposals.  Case No. 18-988, ECF No. 28, Tab 53, AR 2536, 2501.  Two of P4R's references and one of CCPRS's were from the PA-TAC III program.  Case No. 18-988, ECF No. 28, Tab 53, AR 2501, 2535.

The TET assigned P4R a strength for each of the three contract references.  Case No. 18-988, ECF No. 28, Tab 53, AR 2536–7.  The TET assigned CCPRS a significant strength for two of

---

[10] This section of the RFP references Attachment 2 – Labor Categories, Qualifications and Tasks, listing the specific qualifications required of senior, mid and first-level personnel, by labor category.  *See, e.g.*, Case No. 18-988, ECF No. 28, Tab 5, AR 345–49.

the contract references, including the PA-TAC contract reference and a strength for the third contract reference.  Case No. 18-988, ECF No. 28, Tab 53, AR 2501–02.  For the PA-TAC III contract reference, the TER noted that CCPRS received two outstanding and two good ratings under the PPQ and

> [u]nder the "Commitment to Customer Satisfaction and Business-Like Concern for Its Customers' Interest" section, the evaluator gave [CCPRS] an "outstanding" rating stating that [CCPRS] "meets contractual requirements and exceeds many requirements that benefits the end user".  They provided "exceptional customer service for the best interest of the government and completed work with few, if any, minor problems".  [CCPRS] was timely and provided effective project management support in assisting the FEMA PA Program.

Case No. 18-988, ECF No. 28, Tab 53, AR 2501–02.

For the first of P4R's PA-TAC III contracts, P4R received four outstanding PPQ ratings, with the PPQ evaluator commentary stating:

> the Task Order Proposal submissions were th[o]rough, clear, and concise; their management team was professional, responsive, and timely with all requests and inquiries.

Case No. 18-988, ECF No. 28, Tab 53, AR 2536.

In addition, P4R's second PA-TAC III contract received four outstanding PPQ ratings with the PPQ evaluator commenting:

> [P4R] continues to deliver service within the time and budget constraints; performance continues to be completed within the parameters outlined in the SOWs, technical and cost proposals.  [P4R]'s management personnel have always been responsive to FEMA's needs.

Case No. 18-988, ECF No. 28, Tab 53, AR 2536.

The TET also reviewed a CPAR in the PPIRS for one of CCPRS's contract references that contained "Satisfactory" ratings in all categories.  Case No. 18-988, ECF No. 28, Tab 39, AR 2075.  The TET assessed a strength for these ratings.  Case No. 18-988, ECF No. 28, Tab 53, AR 2502.

P4R's proposal, however, did not include any CPARS information.  Case No. 18-988, ECF No. 28, Tab 53, AR 2535 (the TER stating: "PPIRS: No results").

### 3.    Factor 3 – Price.

The SSDD determined that "[a]ll offers are below the IGCE value of $610 [million] for the 5 year period of performance."  Case No. 18-988, ECF No. 28, Tab 36, AR 1279.  P4R's price was $399,505,623.09; CCPRS's was $477,891,967.88, or approximately $78.4 million or 19.6% higher than P4R's.  Case No. 18-988, ECF No. 28, Tab 36, AR 1278–79.  P4R's was the lowest priced proposal and CCPRS was the second lowest priced.  Case No. 18-988, ECF No. 28, Tab 36, AR

1278–79.  In evaluating the Price Factor, the SSDD considered the price of each offeror, the respective price differences, and the relation to the IGCE.  Case No. 18-988, ECF No. 28, Tab 36, AR 1279.

### 4.    The Source Selection Decision Document.

The SSDD contains a two-page tradeoff analysis between CCPRS and P4R.  Case No. 18-988, ECF No. 28, Tab 36, AR 1281–82.  The Factor 1 tradeoff considered the three Sub-factors and in detail reported the greater benefits of CCPRS's proposal.  Case No. 18-988, ECF No. 28, Tab 36, AR 1281–82.

Regarding Past Performance, the SSDD reported:

both offeror's [P]ast [P]erformance was rated as Substantial Confidence.  Neither offeror had any significant weakness or weaknesses.  However, pursuant to the RFP, Factor 1 when combined is significantly more important than Factor 2 thus, even though both [o]fferor's were rated Substantial Confidence under [P]ast [P]erformance, [CCPRS]'s significant strengths and minimum weaknesses under Factor 1, when compared to [P4R], provides the best value to the [G]overnment.

Case No. 18-988, ECF No. 28, Tab 36, AR 1282.

Regarding price, the SSDD concluded:

[CCPRS]'s cost/price offer was the second lowest offer and the lowest offer was [P4R].  However, based on the comparative [T]echnical evaluation and basis for award, [CCPRS]'s [T]echnical [P]roposal provides significant strengths and strengths that demonstrates a level of confidence and benefits when compared to [P4R]'s technical proposal which has an overall technical rating of Acceptable.  [CCPRS]'s technical proposal will fully achieve the Government[']s requirement with minimum risk and will outweigh any cost savings starting with day 1 of the contract.  In accordance with the award order of importance- Factor 1 when combined is significantly more important than Factor 2.  Factors 1 and 2 when combined are significantly more important than Factor 3 – Price.  [CCPRS]'s cost/price proposal in the amount of $477,891,967.88 is considered fair and reasonable as the second lowest proposed price.

Case No. 18-988, ECF No. 28, Tab 36, AR 1282 (emphasis deleted).

**E.      On December 16, 2017, The Federal Emergency Management Agency Awarded Zone 1 To Fluor Enterprises, Inc., Zone 2 To Serco Inc., And Zone 3 To CH2M Hill – CDM PA TAC Recovery Services.**

On October 25, 2017, the SSA reviewed the TERs for each zone.  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 22, AR 982.[11]

On December 16, 2017, FEMA awarded: a Zone 1 contract to Fluor; a Zone 2 contract to Serco; and a Zone 3 contract to CCPRS.  Case No. 18-985, ECF No. 31, Tab 16, AR 716; Case No. 18-986, ECF No. 29, Tab 56, AR 2125; Case No. 18-988, ECF No. 28, Tab 44, AR 2402.  On December 19, 2017, the CO notified P4R of these awards.  Case No. 18-985, ECF No. 31, Tab 51, AR 2085; Case No. 18-986, ECF No. 29, Tab 57, AR 2126; Case No. 18-988, ECF No. 28, Tab 45, AR 2403.

On January 19, 2018, after several written debriefings, P4R filed a bid protest with the Government Accountability Office ("GAO") challenging each of these contract awards and supplemental protests on January 29, 2018.[12]  Case No. 18-985, ECF No. 31, Tabs 54, 55, AR 2098, 2132; Case No. 18-986, ECF No. 29, Tabs 60, 61, AR 2136, 2180; Case No. 18-988, ECF No. 28 Tabs 48, 49, AR 2416, 2454.

On February 16, 2018, FEMA announced that it intended to take corrective action, "consist[ing] of the review of all involved parties' proposals and evaluations to ensure the proper application of evaluation criteria in accordance with the [RFP,] [the issuance of] new or revised source selection decision documents, and, if appropriate, [] new award decisions."  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 56, AR 2162.  On February 22, 2018, the GAO dismissed P4R's bid protests.  *See, e.g.*, Case No. 18-985, ECF No. 31 Tab 58, AR 2166.

---

[11] The Administrative Record also reflected that the SSA discussed the TER with the SSEB Chair.  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 22, AR 982.

[12] On January 23, 2018, another offeror, Dewberry Crawford Group ("DCG"), also filed a bid protest at the GAO.  *See, e.g.*, Case No. 18-986, ECF No. 29, Tab 24, AR 895.

In conducting a corrective action, FEMA conducted a best-value analysis regarding Zone 1 that resulted in the following ratings:

|  | P4R (Offeror 8) | Fluor (Offeror 5) |
|---|---|---|
| **FACTOR 1: TECHNICAL FACTOR** | Acceptable | Very Good |
| SUBFACTOR 1: Technical and Management Approach and Capabilities | Acceptable | Very Good |
| SUBFACTOR 2: Key Personnel | Very Good | Very Good |
| SUBFACTOR 3: Quality Control Plan | Acceptable | Very Good |
| **FACTOR 2: PAST PERFORMANCE** | Substantial Confidence | Substantial Confidence |
| **FACTOR 3: PRICE** | $399,355,561.53 | $609,984,407.29 |

Case No. 18-985, ECF No. 31, Tab 51, AR 2085.

In addition, FEMA conducted a best-value analysis regarding Zone 2 that resulted in the following ratings:

|  | P4R (Offeror 8) | Serco (Offeror 9) |
|---|---|---|
| **FACTOR 1: TECHNICAL FACTOR** | Acceptable | Very Good |
| SUBFACTOR 1: Technical and Management Approach and Capabilities | Very Good | Very Good |
| SUBFACTOR 2: Key Personnel | Marginal | Very Good |
| SUBFACTOR 3: Quality Control Plan | Acceptable | Very Good |
| **FACTOR 2: PAST PERFORMANCE** | Substantial Confidence | Substantial Confidence |
| **FACTOR 3: PRICE** | $398,320,078.69 | $533,519,196.55 |

Case No. 18-986, ECF No. 29, Tab 49, AR 1576, 1593.

FEMA also conducted a best-value analysis for Zone 3 that resulted in the following ratings:

|  | P4R (Offeror 8) | CCPRS (Offeror 3) |
|---|---|---|
| **FACTOR 1: TECHNICAL FACTOR** | Acceptable | Very Good |
| SUBFACTOR 1: Technical and Management Approach and Capabilities | Acceptable | Very Good |
| SUBFACTOR 2: Key Personnel | Acceptable | Very Good |
| SUBFACTOR 3: Quality Control Plan | Acceptable | Very Good |
| **FACTOR 2: PAST PERFORMANCE** | Substantial Confidence | Substantial Confidence |
| **FACTOR 3: PRICE** | $399,505,623 | $477,891,967 |

Case No. 18-988, ECF No. 28, Tab 55, AR 2541.

23

On March 13, 2018, the SSA reviewed a revised SSDD for each zone, concurred with the revised findings and recommendations, and made final award decisions.  Case No. 18-985, ECF No. 31, Tab 22, AR 983; Case No. 18-986, ECF No. 29, Tab 32, AR 1127; Case No. 18-988, ECF No. 28, Tab 22, AR 908.  The SSA did not review any other documents in making these decisions, because he had "a comprehensive understanding of the proposals and the relative merits of those proposals based on the information presented[.]"  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 22, AR 983.

On March 15, 2018, FEMA awarded a Zone 1 contract to Fluor, a Zone 2 contract to Serco, and a Zone 3 contract to CCPRS; P4R was notified of these awards on March 14, 2018.  Case No. 18-985, ECF No. 31, Tabs 3, 16, 61, AR 165 716, 2236; Case No. 18-986, Tab 66, AR 2265; Case No. 18-988, ECF No. 28, Tab 55, AR 2541.

On March 26, 2018, P4R filed a second set of bid protests with the GAO.  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 3, AR 158.

On July 2, 2018, the GAO denied P4R's bid protests.  *See Dewberry Crawford Group; Partner 4 Recovery*, B-415940.12 *et al.*, July 2, 2018; *see also, e.g.* Case No. 18-985, ECF No. 31 Tab 39, AR 1376.

## II.   PROCEDURAL HISTORY.

### A.   Case No. 18-985.

On July 10, 2018, P4R filed a Complaint, under seal, in the United States Court of Federal Claims.  Case No. 18-985, ECF No. 1.  On that same day, P4R filed a Proposed Redacted Complaint, a Motion For A Protective Order, a Motion For Leave To File The July 10, 2018 Complaint Under Seal, and a Notice Of Directly Related Cases.  Case No. 18-985, ECF Nos. 4, 5, 7.

On July 11, 2018, Fluor filed an Unopposed Motion To Intervene.  Case No. 18-985, ECF No. 8.  That same day, the court granted Fluor's July 11, 2018 Unopposed Motion To Intervene and P4R's July 10, 2018 Motions For A Protective Order and Leave To File The July 10, 2018 Complaint Under Seal, and issued a Protective Order.  Case No. 18-985, ECF Nos. 10–12.

On July 13, 2018, the parties filed a Joint Proposed Briefing Schedule.  Case No. 18-985, ECF No. 22.  Therein, the Government represented that it would voluntarily stay performance of the March 15, 2018 Contracts through November 16, 2018.  Case No. 18-985, ECF No. 22 at 2.

On July 17, 2018, the court issued a Scheduling Order.  Case No. 18-985, ECF No. 23.

On July 26, 2018, the Government filed the Administrative Record and refiled the Administrative Record, with a corrected index.  Case No. 18-985, ECF Nos. 25, 26.

On July 31, 2018, the Government filed a Motion To File Corrected Administrative Record On DVD; neither P4R nor Fluor opposed.  Case No. 18-985, ECF No. 28.

On August 10, 2018, P4R filed a Motion For Judgment On The Administrative Record ("Case No. 18-985, Pl. Mot."). Case No. 18-985, ECF No. 29.

On August 13, 2018, the court granted the Government's July 31, 2018 Motion. Case No. 18-985, ECF No. 30. That same day, the Government filed a corrected Administrative Record.

On August 21, 2018, P4R filed an Unopposed Motion For Leave To File An Amended Complaint. Case No. 18-985, ECF No. 32. On September 4, 2018, the court granted P4R's August 21, 2018 Motion. Case No. 18-985, ECF No. 33. That same day, P4R filed an Amended Complaint ("Case No. 18-985, Am. Compl."). Case No. 18-985, ECF No. 34.

On September 7, 2018, the Government filed a Cross-Motion And Response To P4R's Motion For Judgment On The Administrative Record ("Case No. 18-985, Gov't Mot."). Case No. 18-985, ECF No. 35. The Government also attached a September 6, 2018 Declaration from the CO, Daisy Joseph. Case No. 18-985, ECF No. 35-1. That same day, Fluor filed a Cross-Motion For Judgment On The Administrative Record And Opposition To P4R's Motion For Judgment On The Administrative Record ("Fluor Mot."). Case No. 18-985, ECF No. 36.

On September 27, 2018, P4R filed a Reply In Support Of Its Motion For Judgment On The Administrative Record And Opposition To Defendant's And Defendant-Intervenor's Cross-Motions For Judgment On The Administrative Record ("Case No. 18-985, Pl. Reply"). Case No. 18-985, ECF No. 38. P4R's Reply attached a September 27, 2018 Declaration of a Vice President, ████████, of AECOM Technical Services, Inc. ("AECOM"), an affiliate company of P4R. Case No. 18-985, ECF No 38-1. On October 1, 2018, P4R filed a Motion To Supplement The Court's Record with the September 27, 2018 ████ Declaration. Case No. 18-985, ECF No. 39. On October 9, 2018, P4R filed a redacted version of the September 27, 2018 ████ Declaration. Case No. 18-985, ECF No. 40.

On October 10, 2018, the Government filed a Notice Of Correction Of The September 6, 2018 Joseph Declaration. Case No. 18-985, ECF No. 41. That same day, P4R filed a Notice Of The Government's Consent To P4R's October 1, 2018 Motion To Supplement The Court's Record. Case No. 18-985, ECF No. 42. On October 10, 2018, Fluor also filed an Opposition To P4R's Motion To Supplement The Court's Record. Case No. 18-985, ECF No. 43.

On October 17, 2018, the Government filed a Reply In Support Of Its Cross-Motion For Judgment Upon The Administrative Record ("Case No. 18-985, Gov't Reply"). Case No. 18-985, ECF No. 44. That same day, P4R filed a Reply In Support Of Its Motion To Supplement The Court's Record. Case No. 18-985, ECF No. 45. That same day, Fluor also filed a Reply In Support Of Its Cross-Motion For Judgment On The Administrative Record ("Fluor Reply"). Case No. 18-985, ECF No. 46.

On October 26, 2018, the Government filed a Notice Of Extension Of Voluntary Stay until December 6, 2018. Case No. 18-985, ECF No. 47 at 3.

**B.     Case No. 18-986.**

On July 10, 2018, P4R filed a second Complaint, under seal, in the United States Court of Federal Claims.  Case No. 18-986, ECF No. 1.  On that same day, P4R filed a Proposed Redacted Complaint, Motions For A Protective Order and Leave To File The July 10, 2018 Complaint Under Seal, and a Notice Of Directly Related Cases.  Case No. 18-986, ECF Nos. 4, 5, 7.

On July 11, 2018, Serco filed an Unopposed Motion To Intervene.  Case No. 18-986, ECF No. 8.  That same day, the court granted Serco's July 11, 2018 Unopposed Motion To Intervene and P4R's July 10, 2018 Motions For A Protective Order and Leave To File The July 10, 2018 Complaint Under Seal, and issued a Protective Order.  Case No. 18-986, ECF Nos. 11–13.

On July 13, 2018, the parties filed a Jointly Proposed Briefing Schedule.  Case No. 18-986, ECF No. 22.  Therein, the Government represented that it would voluntarily stay performance of the March 15, 2018 Contracts through November 16, 2018.  Case No. 18-986, ECF No. 22 at 2 n.1.

On July 17, 2018, the court issued a Scheduling Order.  Case No. 18-986, ECF No. 23.

On July 26, 2018, the Government filed the Administrative Record and refiled the Administrative Record, with a corrected index.  Case No. 18-986, ECF Nos. 25, 26.

On July 31, 2018, the Government filed a Motion To File Corrected Administrative Record On DVD; neither P4R nor Serco opposed.  Case No. 18-986, ECF No. 26.

On August 13, 2018, the court granted the Government's July 31, 2018 Motion.  Case No. 18-986, ECF No. 27.  That same day, the Government filed the corrected Administrative Record and P4R filed a Motion For Judgment On The Administrative Record ("Case No. 18-986, Pl. Mot.").  Case No. 18-986, ECF No. 28.

On August 16, 2018, the Government filed a Motion To File Corrected Administrative Record On DVD; neither P4R nor Serco opposed.  Case No. 18-986, ECF No. 30.

On August 21, 2018, P4R filed an Unopposed Motion For Leave To Filed An Amended Complaint.  Case No. 18-986, ECF No. 31.  On September 4, 2018, the court granted P4R's August 21, 2018 Motion.  Case No. 18-986, ECF No. 32.  That same day, P4R filed an Amended Complaint ("Case No. 18-986, Am. Compl.").  Case No. 18-986, ECF No. 34.

On September 10, 2018, Serco filed a Cross-Motion For Judgment On The Administrative Record And Opposition To P4R's Motion For Judgment On The Administrative Record ("Serco Mot.").  Case No. 18-986, ECF No. 35.  That same day, Serco filed an Unopposed Motion To Supplement The Administrative Record.  Case No. 18-986, ECF No. 36.  That same day, the Government also filed a Cross-Motion For Judgment On The Administrative Record, And Response To P4R's Motion For Judgment On The Administrative Record ("Case No. 18-986, Gov't Mot.").  Case No. 18-986, ECF No. 37.  The Government Cross-Motion attached the September 6, 2018 Joseph Declaration, the CO.  Case No. 18-986, ECF No. 37-1.

On September 28, 2018, P4R filed a Reply In Support Of Its Motion For Judgment On The Administrative Record And Opposition to Defendant's And Defendant-Intervenor's Cross-Motions

26

For Judgment On The Administrative Record ("Case No. 18-986, Pl. Reply"). Case No. 18-986, ECF No. 39. P4R's Reply included a September 28, 2018 Declaration of a Vice President of AECOM, ████████████████. Case No. 18-986, ECF No. 39-1. That same day, P4R also filed a Motion To Supplement The Court's Record with the September 28, 2018 ████████ Declaration. Case No. 18-986, ECF No. 40. On October 4, 2018. P4R filed a redacted version of the September 28, 2018 ████████ Declaration. Case No. 18-986, ECF No. 41.

On October 10, 2018, the Government filed a Notice Of Correction of the September 6, 2018 Joseph Declaration. Case No. 18-986, ECF No. 42. That same day the Government filed a Third Motion To File Corrected Administrative Record. Case No. 18-986, ECF No. 43. That same day, P4R also filed a Notice Of The Government's Consent To P4R's September 28, 2018 Motion To Supplement The Court's Record. Case No. 18-986, ECF No. 44.

On October 15, 2018, Serco filed a Motion To Exceed The Page Limitation. Case No. 18-986, ECF No. 45. On October 16, 2018, P4R filed a Motion to Supplement The Administrative Record, To Amend The Court's Scheduling Order And For Costs/Fees and a Response In Opposition to Government's Third Motion To File Corrected Administrative Record. Case No. 18-986, ECF No. 46. On October 17, 2018, the court granted Serco's October 15, 2018 Motion and Serco's September 10, 2018 Unopposed Motion To Supplement The Administrative Record. Case No. 18-986, ECF Nos. 47, 48.

On October 18, 2018, Serco filed a Reply Brief In Support Of Its Motion For Judgment On The Administrative Record ("Serco Reply"). Case No. 18-986, ECF No. 49. On that same day, the Government filed a Reply In Support Of Its Cross-Motion For Judgment Upon The Administrative Record ("Case No. 18-986, Govt. Reply"). Case No. 18-986, ECF No. 50

On October 26, 2018, the Government filed a Motion For Leave To File Sur-Reply in response to Serco's Reply. Case No. 18-986, ECF No. 51. That same day, the Government filed a Notice Of Extension Of Voluntary Stay until December 6, 2018. Case No. 18-986, ECF No. 52 at 3.

On October 30, 2018, the Government filed a Reply In Support Of Its Motion To Correct The Administrative Record, Response To P4R's Motions To Supplement The Administrative Record, Amend The Scheduling Order, And For Attorney's Fees And Costs, and a Motion To Supplement The Court's Record with an October 22, 2018 Joseph Declaration, the CO. Case No. 18-986, ECF No. 53.

On October 30, 2018, Serco filed a Motion In Opposition To P4R's Motion To Supplement The Administrative Record, To Amend The Scheduling Order, And For Costs/Fees. Case No. 18-986, ECF No. 54.

On October 31, 2018, P4R filed a Motion To Strike Or Disregard part of Serco's Reply. Case No. 18-986, ECF No. 55.

On November 5, 2018, Serco filed a Response To P4R's Motion To Strike. Case No. 18-986, ECF No. 56.

On November 6, 2018, P4R Filed A Reply In Support Of Its Motion To Supplement The Administrative Record, To Amend The Court's Scheduling Order, And For Costs/Fees.  Case No. 18-986, ECF No. 57.

On November 8, 2018, the court issued a Status Conference Order for November 13, 2018. Case No. 18-986, ECF No. 58.

On November 9, 2018, P4R filed a Response To The Government's Motion For Leave To File Sur-Reply.  Case N. 18-986, ECF No. 59.

On November 13, 2018, P4R filed a Reply In Support Of Its Motion To Strike Or Disregard. Case No. 18-986, ECF No. 60.  That same day, the court convened a telephone Status Conference.

On November 14, 2018, the Government filed a Notice Of Chronology Of Events Regarding FEMA's Evaluation Of The Technical Factor.  Case No. 18-986, ECF No. 61.

On November 19, 2018, P4R filed a Notice Of Chronology Of Relevant Evaluation Dates And Events.  Case No. 18-986, ECF No. 62.

### C.    Case No. 18-988.

On July 10, 2018, P4R filed a third Complaint, under seal, in the United States Court of Federal Claims.  Case No. 18-988, ECF No. 1.  On that same day, P4R filed a Proposed Redacted Complaint, a Motion For A Protective Order and Motion for Leave To File The July 10, 2018 Complaint Under Seal, and a Notice Of Directly Related Cases.  Case No. 18-988, ECF Nos. 4, 5, 7.

On July 11, 2018, CCPRS filed an Unopposed Motion To Intervene.  Case No. 18-988, ECF No. 8.  That same day, the court granted CCPRS's July 11, 2018 Unopposed Motion To Intervene and P4R's July 10, 2018 Motions For A Protective Order and Leave To File The July 10, 2018 Complaint Under Seal, and issued a Protective Order.  Case No. 18-988, ECF Nos. 10–12.

On July 13, 2018, the parties filed a Joint Proposed Briefing Schedule.  Case No. 18-988, ECF No. 21.  Therein, the Government represented that it would voluntarily stay performance of the March 15, 2018 Contracts through November 16, 2018.  Case No. 18-988, ECF No. 21 at 2 n. 1.

On July 17, 2018, the court issued a Scheduling Order.  Case No. 18-988, ECF No. 22.

On July 26, 2018, the Government filed the Administrative Record.  Case No. 18-988, ECF No. 25.

On July 31, 2018, the Government filed a Motion To File Corrected Administrative Record On DVD; neither P4R nor CCPRS opposed.  Case No. 18-988, ECF No. 26.

On August 13, 2018, the court granted the Government's July 31, 2018 Motion.  Case No. 18-988, ECF No. 27.  That same day, the Government filed the corrected Administrative Record.

On August 14, 2018, P4R filed a Motion For Judgment On The Administrative Record ("Case No. 18-988, Pl. Mot."). Case No. 18-988, ECF No. 29.

On August 21, 2018, P4R filed an Unopposed Motion For Leave To Filed An Amended Complaint. Case No. 18-988, ECF No. 30.

On September 4, 2018, the court granted P4R's August 21, 2018 Unopposed Motion. Case No. 18-988, ECF No. 31. That same day, P4R filed an Amended Complaint ("Case No. 18-988, Am. Compl."). Case No. 18-988, ECF No. 32.

On September 11, 2018, the Government filed a Cross-Motion And Response To P4R's Motion For Judgment On The Administrative Record ("Case No. 18-988, Gov't Mot."). Case No. 18-988, ECF No. 33. The Government's Response included the September 6, 2018 Joseph Declaration, the CO. Case No. 18-988, ECF No. 33-1. That same day, CCPRS filed a Cross-Motion For Judgment On The Administrative Record And Response To P4R's Motion For Judgment On The Administrative Record ("CCPRS Mot."). Case No. 18-988, ECF No. 34.

On October 1, 2018, P4R filed a Reply In Support Of Its Motion For Judgment On The Administrative Record And Opposition to Defendant's And Defendant-Intervenor's Cross-Motions For Judgment On The Administrative Record ("Case No. 18-988, Pl. Reply"). Case No. 18-988, ECF No. 37. P4R's Reply attached a September 28, 2018 Declaration of a Vice President of AECOM, ███████. Case No. 18-988, ECF No. 371. That same day, P4R filed a Motion To Supplement The Court's Record with the September 28, 2018 ███████ Declaration. Case No. 18-988, ECF No. 38. On October 9, 2018 P4R filed a redacted version of the September 28, 2018 ███████ Declaration. Case No. 18-988, ECF No. 40.

On October 10, 2018, the Government filed a Notice Of Correction Of The September 6, 2018 Joseph Declaration. Case No. 18-988, ECF No. 41.

On October 11, 2018, P4R filed a Notice Of The Government's Consent To P4R's October 1, 2018 Motion To Supplement The Court's Record. Case No. 18-988, ECF No. 42.

On October 15, 2018, CCPRS filed a Response In Opposition To P4R's Motion To Supplement The Court's Record. Case No. 18-988, ECF No. 43.

On October 19, 2018, CCPRS filed a Reply In Support of Its Cross-Motion For Judgment On The Administrative Record And Response to P4R's Motion For Judgment On The Administrative Record ("CCPRS Reply"). Case No. 18-988, ECF No. 44. That same day, the Government filed a Reply In Support Of Its Cross-Motion For Judgment Upon The Administrative Record ("Case No. 18-988, Gov't Reply"). Case No. 18-988, ECF No. 45.

On October 22, 2018, P4R filed a Reply In Support Of Its Motion To Supplement The Court's Record. Case No. 18-988, ECF No. 46.

On October 26, 2018, the Government filed a Notice Of Extension Of Voluntary Stay until December 6, 2018. Case No. 18-988, ECF No. 47 at 3.

## III.    DISCUSSION.

### A.    Subject Matter Jurisdiction.

Subject matter jurisdiction must be determined at the outset of a case.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884))).

Pursuant to the Administrative Dispute Resolution Act of 1995, the United States Court of Federal Claims has jurisdiction

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award of a contract or any alleged violation of statute or regulation *in connection with a procurement or a proposed procurement*. . . . [T]he United States Court of Federal Claims . . . shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (emphasis added).

In Case No. 18-985, the September 4, 2018 Amended Complaint alleges that FEMA improperly awarded the PA-TAC IV Zone 1 contract to Fluor, because FEMA: (1)  conducted a flawed reasonableness evaluation of Fluor's price (Case No. 18-985, Am. Compl. ¶¶ 53–71); (2) overrated Fluor's Past Performance (Case No. 18-985, Am. Compl. ¶¶ 72–83); (3) made an irrational best value decision[13] (Case No. 18-985, Am. Compl. ¶¶ 84–121); and (4) conducted a flawed evaluation of the Technical Proposals (Case No. 18-985, Am. Compl. ¶¶ 122–156).

In Case No. 18-986, the September 4, 2018 Amended Complaint alleges that FEMA improperly awarded the PA-TAC IV Zone 2 contract to Serco, because FEMA: (1) conducted an irrational and disparate Past Performance evaluation (Case No. 18-986, Am. Compl. ¶¶ 52–67); (2) made an irrational best value decision (Case No. 18-986, Am. Compl. ¶¶ 68–103); (3) failed to properly investigate Serco's unequal access to information (Case No. 18-986, Am. Compl. ¶¶ 104–118); and (4) conducted a flawed evaluation of the Technical Proposals (Case No. 18-986, Am. Compl. ¶¶ 119–159).

And, in case No. 18-986, the September 4, 2018 Amended Complaint alleges that FEMA improperly awarded the PA-TAC IV Zone 3 contract to CCPRS, because FEMA: (1) conducted an irrational and disparate Past Performance evaluation (18-988 Am. Compl. ¶¶ 51–60); (2) made an

---

[13] The Amended Complaint in Case No. 18-985 repeats the same language in Count II and Count III, *i.e.*, FEMA overrated Fluor's Past Performance.  Case No. 18-985, Am. Compl. ¶¶ 72, 84.  The court construes Count III to parallel P4R's third claim in the Case No. 18-985 August 10, 2018 Motion For Judgment On the Administrative Record, *i.e.*, that FEMA's best value decision is irrational.  Case No. 18-985 Pl. Mot. at 21.

irrational best value decision (Case No. 18-988. Am. Compl. ¶¶ 61–101); and (3) conducted a flawed evaluation of the Technical Proposals (18-988 Am. Compl. ¶¶ 102–140).

For these reasons, the court has determined that it has subject matter jurisdiction, under 28 U.S.C. § 1491(b)(1), to adjudicate the claims alleged in the September 4, 2018 Amended Complaints in Case No. 18-985, Case No. 18-986, and Case No. 18-988.

### B.   Standing.

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017). Therefore, the party "invoking federal jurisdiction bears the burden of establishing the[ ] elements [of standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To demonstrate the existence of a case or controversy, a plaintiff must show "an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and 'that is likely to be redressed by a favorable judicial decision.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). The United States Court of Federal Claims, although an Article I court, "applies the same standing requirements enforced by other federal courts created under Article III." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009).

Standing under § 1491(b)(1) "is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by the failure to award the contract." *Id.* A plaintiff who files a bid protest in the United States Court of Federal Claims must establish that the plaintiff: "(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest." *Id.* (modifications in original). To establish "a direct economic interest, the [plaintiff] must show that it had a 'substantial chance' of winning the contract." *Digitalis Educ. Sols., Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012).

In Case No. 18-985, the September 4, 2018 Amended Complaint alleges that P4R "submitted a fully-compliant proposal in response to the [RFP], but was not selected for award," satisfying that P4R was an actual bidder. Case No. 18-985, Am. Compl. ¶ 12. In addition, the September 4, 2018 Amended Complaint alleges that P4R submitted the lowest priced proposal (Case No. 18-985, Am. Compl. ¶ 57) and that, but for FEMA's flawed reasonableness evaluation (Case No. 18-985, Am. Compl. ¶¶ 53–71), error in evaluating Past Performance (Case No. 18-985, Am. Compl. ¶¶ 72–83), Technical rating errors (Case No. 18-985, Am. Compl. ¶¶ 122–156), and an irrational best value decision (Case No. 18-985, Am. Compl. ¶¶ 84–121), P4R should have been selected as the overall best-value offeror (Case No. 18-985, Am Compl. ¶ 29). As such, the aforesaid alleges sufficient facts to establish that P4R had a substantial chance of winning the Zone 1 contract, absent the alleged errors.

In Case No. 18-986, the September 4, 2018 Amended Complaint alleges that that P4R "submitted a fully-compliant proposal in response to the [RFP], but was not selected for award," satisfying that P4R is an actual bidder. Case No. 18-986, Am. Compl. ¶ 12. The September 4, 2018 Amended Complaint further alleges that P4R submitted the lowest priced proposal (Case No. 18-986, Am. Compl. ¶ 84), and, but for FEMA's Past Performance rating errors (Case No. 18-986, Am. Compl. ¶¶ 52–67), Technical rating errors (Case No. 18-986, Am. Compl. ¶¶ 119–159), failure to properly investigate Serco's unequal access to information (Case No. 18-986, Am. Compl. ¶¶

31

104–118), and irrational best value decision (Case No. 18-986, Am. Compl. ¶¶ 68–103), P4R should have been selected as the overall best-value offeror (Case No. 18-986, Am Compl. ¶ 28). The Complaint alleges sufficient facts that P4R had a substantial chance of winning the Zone 2 contract, but for the alleged errors.

In Case No. 18-988, the September 4, 2018 Amended Complaint also alleges that P4R "submitted a fully-compliant proposal in response to the [RFP], but was not selected for award." Case No. 18-988, Am. Compl. ¶ 12. The September 4, 2018 Amended Complaint also alleges that P4R submitted the lowest priced proposal (Case No. 18-988, Am. Compl. ¶ 91), and, but for FEMA's Past Performance rating errors (Case No. 18-988, Am. Compl. ¶¶ 51–60), Technical rating errors, (Case No. 18-988, Am. Compl. ¶¶ 102–140), and irrational best value decision (Case No. 18-988, Am. Compl. ¶¶ 61– 101), P4R had a substantial chance of winning the Zone 3 contract (Case No. 18-988, Am Compl. ¶ 29).

For these reasons, the court has determined that P4R has standing to challenge FEMA's contract awards to Fluor, Serco, and CCPRS.

### C.    Standard of Review.

The United States Court of Appeals for the Federal Circuit requires that the court adjudicate a motion for judgment on the administrative record, as if it were an expedited trial on the record. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Therefore, a dispute about material issues of fact does not prohibit the court from granting a RCFC 52.1 motion. *Id.* at 1354. Instead, the court can base a determination on "factual findings from the [Administrative R]ecord evidence." *Id.*

The Administrative Dispute Resolution Act, Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996), amended the Tucker Act, 28 U.S.C. 1491, to authorize the United States Court of Federal Claims to adjudicate bid protests under the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."); 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"); *see also Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004) ("Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (citations omitted)).

Therefore, the trial court's first responsibility in a bid protest is to determine whether a federal agency violated a federal statute or procurement regulation and whether any such violation was "clear and prejudicial." *Axiom*, 564 F.3d at 1381 (holding that "the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations" (internal quotation marks and citations omitted)).

If no "clear and prejudicial" violations of law or regulation are determined, the court next is required to determine whether the agency decision evidences a rational basis. *See Savantage Fin. Servs. Inc. v. United States*, 595 F.3d 1282, 1286 (Fed. Cir. 2010) (holding that a court "must

sustain an agency action[,] unless the action does not 'evince[] rational reasoning and consideration of relevant factors'" (quotations omitted, second modification original)); *see also Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974) (holding that a court "will uphold a decision of less than ideal clarity[,] if the agency's path may reasonably be discerned"). "Accordingly, the test for reviewing courts is to determine whether the contracting agency provided a coherent and reasonable explanation of [the] exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001) (internal quotations omitted). If an agency acted without a rational basis, the court must then determine whether "the bid protestor was prejudiced by that conduct." *Bannum*, 404 F.3d at 1351; *see also Active Network, LLC v. United States*, 130 Fed. Cl. 421, 431–32 (Fed. Cl. 2017). The plaintiff must show prejudice by demonstrating "that there was a substantial chance it would have received the contract award but for [the agency's procurement] error." *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (internal citation omitted); *see also Bannum*, 404 F.3d at 1353.

The final step is the court's analysis to ascertain whether the federal agency otherwise acted in an arbitrary or capricious manner, with respect to the procurement at issue. *See Banknote*, 365 F.3d at 1350 ("[A] reviewing court shall set aside the agency action if it is 'arbitrary, capricious, [or] an abuse of discretion.'"). The United States Supreme Court has held that a federal agency's decision is "arbitrary and capricious," when an agency "entirely failed to consider an important aspect of the problem, offered an explanation for [the] decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). In this regard, the United States Court of Appeals for the Federal Circuit has held that "contracting officers are 'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process." *Impresa*, 238 F.3d at 1332 (quoting *Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)).

### D.    Case No. 18-985.

#### 1.    Plaintiff's September 4, 2018 Amended Complaint.

Count I of the September 4, 2018 Amended Complaint in Case No. 18-985 alleges that FEMA conducted a flawed evaluation of the reasonableness of Fluor's price and erred in "categorically determin[ing] that all proposals reviewed were fair and reasonable from a pricing standpoint[,]" although "Fluor's price[] was unreasonably high in comparison to the other offerors[,]" as well as "significantly higher than the IGCE." Case No. 18-985, Am. Compl. ¶¶ 53, 55, 58, 63.

Count II of the September 4, 2018 Amended Complaint alleges that FEMA overrated Fluor's Past Performance by "irrationally assigning Fluor a Substantial Confidence rating under the Past Performance [F]actor" that amounted to unequal treatment. Case No. 18-985, Am. Compl. ¶¶ 72–83.

Count III of the September 4, 2018 Amended Complaint alleges that FEMA's best value decision is "irrational,"[14] because: (1) FEMA made the award decision, based on a SSDD that was "riddled with errors;" (2) FEMA did not comply with the RFP's requirement to award a contract, based on best value; (3) FEMA failed meaningfully to consider price in determining best value; (4) FEMA failed to identify Past Performance discriminators; and (5) the SSDD did not represent the SSA's independent decision.  Case No. 18-985, Am. Compl. ¶¶ 86, 90, 101, 107, 113.

Count IV of the September 4, 2018 Amended Complaint alleges that FEMA's evaluation of the Technical Proposals suffered from "multiple material flaws."  Case No. 18-985, Am. Compl. ¶¶ 122–156.  Specifically, FEMA "failed to evaluate offerors equally in assigning weaknesses under each [T]echnical [S]ub[-]factor[,]" engaging in disparate treatment, and favoring Fluor.  Case No. 18-985, Am. Compl. ¶¶ 124, 130.

## 2.   Plaintiff's Argument.

P4R argues that "Fluor's overall price was unreasonably high in comparison to the other offerors[,] . . . 15 to 53% higher[.]"  Case No. 18-985, Pl. Mot. at 10–11.  Therefore, it was irrational for FEMA to conclude that Fluor's pricing was reasonable, based on the "range bound proximity" to other offerors.  Case No. 18-985, Tab 13, AR 663.  Fluor's price did not fall below the IGCE, when calculated without the CLIN 0004 plug numbers; using the same numbers FEMA did in calculating the IGCE, Fluor's price is $629,307, 305—$18.9 million more than the IGCE price, *i.e.*, $610,395,542.77.  Case No. 18-985, Pl. Mot. at 11–12.

In addition, P4R argues that TET irrationally assigned Fluor a "Substantial Confidence" rating under the Past Performance Factor, because Fluor did not provide three task orders from PA-TAC III Zone 1, as the TER indicated, but only one.  Case No. 18-985, Tab 59, AR 2210.  In addition, the SSDD referenced a PPQ for Project 3 and a fourth reference not contained in Fluor's Zone 1 proposal.  Case No. 18-985, Pl. Mot. at 16.  The TET also failed to consider the CPARS in the PPIRS to "the greatest extent possible," as required by the RFP.  Case No. 18-985, Pl. Mot. at 14 (quoting Case No. 18-985, ECF No. 31, Tab 5, AR 332).  Fluor's CPARS reflected that the TET assigned "Satisfactory" ratings for Past Performance, but the TER ignored this and assigned Fluor a "Substantial Confidence" rating.  Case No. 18-985, Pl. Mot. at 14–15.  In addition, the TET incorrectly concluded that Fluor's three references were very relevant to PA-TAC IV, but they were single TOs that are not relevant to a "large-scale IDIQ contract, with a five year period of performance[,] and a ceiling of $610 million."  Case No. 18-985, Pl. Mot. at 17–18 (underline deleted).  In fact, none of Fluor's TO references involve similar, or essentially the same, size, scope, complexity, and type of experience as the PA-TAC IV Contract.  Case No. 18-985, Pl. Mot. at 19.

Next, P4R argues that "the SSDD is riddled with numerous errors and inaccuracies that left the SSA profoundly misinformed about the true comparative position of offerors."  Case No. 18-985, Pl. Mot. at 21.  The SSDD contained the prejudicial errors regarding Fluor's Past Performance rating and reasonableness of Fluor's price.  Case No. 18-985, Pl. Mot. at 21–22.  The pricing error is exacerbated by the SSDD's misleading characterization of the price disparity between Fluor, the

---

[14] Again, the court construes Count III the same as P4R's third claim in P4R's Case No. 18-985 August 10, 2018 Motion For Judgment On the Administrative Record.  Case No. 18-985, Pl. Mot. at 21.

highest priced proposal, and P4R, the lowest priced proposal, as 41.7 percent.  Case No. 18-985, ECF No. 31, Tab 42, AR 1489.  Instead, the SSDD should have reflected that Fluor's proposal was 53 percent higher than P4R's.  Case No. 18-985, Pl. Mot. at 23.

In addition, the SSA did not follow the RFP's requirement that the contract be awarded on a best value basis, but instead made the award to "the strongest technical proposal, regardless of price premium, as long as it believed the price was reasonable, which FEMA defined as any price that fell below the IGCE."  Case No. 18-985, Pl. Mot. at 25.  This is best evidenced by the trade-off between Fluor and Offeror 3: both were rated "Very Good" overall in the Technical Factor and "Very Good" for each Sub-factor, both were given a "Substantial Confidence" rating for Factor 2, but Fluor's price was $609,984,407.29 compared with $477,891,967.88 for Offeror 3.  Case No. 18-985, Pl. Mot. at 25.  Moreover, the SSDD did "not meaningfully discuss why Fluor's claimed benefits are worth the staggering price difference that [FEMA] will have to pay for them."  Case No. 18-985, Pl. Mot. at 26.  As such, the SSA awarded the contract to the highest rated proposal at a price the SSA considered reasonable in violation of the Competition in Contracting Act ("CICA"), by demoting price to a "nominal factor."  Case No. 18-985, Pl. Mot. at 26–27 (citations omitted).  The SSDD failed to explain why Fluor's higher-priced proposal should receive a contract award.  Case No. 18-985, Pl. Mot. at 28.  Simply stating that P4R's proposal was "lower priced" than Fluor's, generically describing Fluor's proposal's purported advantages over P4R's, and concluding these advantages "warrant[ed] the additional costs," does not "meaningfully demonstrate whether these alleged advantages are worth anywhere near $210 million."  Case No. 18-985, Pl. Mot. at 30 (quoting Case No. 18-985, ECF No. 31, Tab 42, AR 1497).

The SSA also failed to identify Past Performance discriminators between P4R and Fluor or "look behind the 'Substantial Confidence' ratings Fluor and P4R received[.]"  Case No. 18-985, Pl. Mot. at 30.  This failure stands in contrast to the significantly detailed trade-off analysis between Fluor and Offeror 3, with respect to the relevancy of their Zone 1 PA-TAC III work.  Case No. 18-985, ECF No. 31, Tab 42, AR 1491–92.

The most significant flaw is the failure of the SSA to exercise independent judgment, instead of rubber-stamping the SSDD.  Case No. 18-985, Pl. Mot. at 32.  The SSA's sole participation in the best value determination after corrective action consisted of "receiv[ing] and review[ing] the revised SSDD, concur[ring] with the revised finding and recommendations of the SSEB, and 'ma[king]' the new, final award decision for each zone."  Case No. 18-985, Pl. Mot. at 32 (citing Case No. 18-985, ECF No. 31, Tab 22, AR 983).  The "only relevant document the SSA considered in concurring with the 'new' best value decision was the revised SSDD, which the SSEB delivered to him with the best value analysis pre-written and awardees identified[,]" evidencing that the SSA "made no revision and asked no questions; he simply signed his concurrence."  Case No. 18-985, Pl. Mot. at 33.

P4R also contends that the TET engaged in systematic disparate treatment and "made irrational [T]echnical evaluation findings contrary to both the facts and the terms of the RFP."  Case No. 18-985, Pl. Mot. at 35.  Under Sub-factor 1 of the Technical Factor the TET assigned P4R a weakness for multiple points of contact with the FEMA Task Monitor, but did not treat Fluor—also proposing multiple points of contact with FEMA—the same.  Case No. 18-985, ECF No. 31, Tab 59, AR 2223; Tab 23, AR 989.  In addition, the TET assessed P4R a weakness under Sub-factor 3, based on a belief that P4R did not adequately describe how the PM, DPM, and DRM interacted and

operated differently in reviewing the assignment and resources available to select staff for assignments. Case No. 18-985, ECF No. 31, Tab 59, AR 2228. Notably, Fluor's proposal failed to differentiate between the proposed responsibilities of key personnel, but the TET did not assign it a weakness. Case No. 18-985, ECF No. 31, Tab 23, AR 1020.

Finally, the TET failed to assess P4R's proposal with "multiple significant strengths [that it] reasonably deserved for providing benefits that significantly exceed the RFP's requirements and [was] very beneficial to [FEMA.]" Case No. 18-985, Pl. Mot. at 37. These included: (1) not assigning P4R a significant strength under Sub-factor 1 for significant experience; and (2) not assigning a significant strength under Sub-factor 3 for P4R's robust resources to deploy staff, including P4R's Technical Practice Network. Case No. 18-985, ECF No. 31, Tab 7, AR 466, 472; Tab 59, AR 2227.

### 3.    The Government's Response.

The Government responds that P4R's price argument is contrary to the RFP and the Federal Acquisition Regulation ("FAR"). Govt. Mot. at 34. The TET properly evaluated prices in two of the ways specified by FAR 15.404-1(b)(2): "[c]omparison of proposed prices received in response to the solicitation" and "[c]omparison of proposed prices with independent cost estimates[,]" both of which were identified in the RFP. Case No. 18-985, ECF No. 31, Tab 5, AR 334. Although FEMA did use a plug number of $378,284.41 for CLIN 0004 and the IGCE estimated a cost of $19.7 million for CLIN 0004, "[in] its pricing analysis, FEMA acknowledged the application of a different plug number was an error and explained that the plug number in the RFP was only a placeholder for the purposes of the evaluation process[.]" Case No. 18-985, Gov't Mot. at 35 (citing Case No. 18-985, ECF No. 31, Tabs 13, 39, AR 663, 1396). If P4R disagreed with this low plug number, it was required to protest that issue before submitting a proposal. Case No. 18-985, Gov't Mot. at 35. In addition, the plug number was used in all proposals, so that the "the delta between each offeror's overall prices [did] not change," once the plug number is removed. Case No. 18-985, Gov't Mot. at 36. Therefore, Fluor's price was reasonable when compared to other offerors. Case No. 18-985, Gov't Mot. at 37.

In addition, the TET properly assigned Fluor a "Substantial Confidence" rating for Past Performance, because Fluor's "submittal of [TOs] demonstrates actual performance under" the PA-TAC III contract. Case No. 18-985, Gov't Mot. at 21. If the TET had ignored Fluor's PA-TAC III umbrella contract, of which the TOs were a part, FEMA would have violated FAR 15.305(a)(2)(ii). Case No. 18-985, Gov't Mot. at 22. In any event, P4R cannot show prejudice, because it received the same "Substantial Confidence" rating for Past Performance as Fluor. Case No. 18-985, ECF No. 31, Tab 59, AR 2228. Each of Fluor's references demonstrated similar activities to the PA-TAC IV Contract and "FEMA was not required to compare offerors' [P]ast [P]erformance examples to the 5-year period of performance or estimated $610M ceiling to the current requirement, because the RFP did not set a minimum period of performance or dollar value threshold for which a [P]ast [P]erformance example could be considered 'Very Relevant.'" Case No. 18-985, Gov't Mot. at 24–27.

The Government admits that the clerical errors were made concerning Past Performance, including references that Fluor submitted three Past Performance references in Zone 1; but, none of these errors prejudiced P4R. Case No. 18-985, ECF No. 31, Tab 59, AR 2210. Zone-specific

experience was not required by the RFP and Fluor's references were found to be "Very Relevant." Case No. 18-985, ECF No. 31, Tab 5, AR 332–33; Tab 42, AR 1491. The PPQ that P4R references inadvertently was contained in the record, but had no effect on the award decision for Zone 1. Case No. 18-985, Gov't Mot. at 29. In addition, consideration of the CPARS for this "fourth" project is consistent with the RFP that requires FEMA "consider [P]ast [P]erformance information contained in the PPIRS to the greatest extent possible." Case No. 18-985, ECF No. 31, Tab 5, AR 332. The TET also reasonably considered Fluor's CPARS reports, concluding that "Satisfactory" ratings did not warrant a strength or weakness. Case No. 18-985, ECF No. 31, Tab 59, AR 2210–15.

Nor did the SSDD mischaracterize P4R's and Fluor's prices by concluding that the price disparity was 41.7 percent. Case No. 18-985, ECF No. 31, Tab 42, AR 1489. There was no RFP requirement for a price premium analysis. Case No. 18-985, Gov't Mot. at 39 n. 28. Therefore, the SSA reasonably concluded that the technical benefits of Fluor's proposal warranted the additional proposed price and was consistent with the RFP's evaluation criteria and the case law. Case No. 18-985, ECF No. 31, Tab 5, AR 329.

In addition, it was reasonable for the majority of the SSDD trade-off analysis to address the Technical Sub-factors, because the Technical Factor was significantly more important than Past Performance. Case No. 18-985, ECF No. 31, Tab 5, AR 329. The trade-off analysis between Fluor and Offeror 3 as to Past Performance certainly provided more detail, but this was reasonable, since Offeror 3 was rated closest to Fluor in the Technical Factor. Case No. 18-985, Gov't Mot. at 41 n. 33.

The TET also reasonably evaluated the Technical Factors in accordance with the RFP. Case No. 18-985, Gov't Mot. at 12. Regarding Sub-factor 1, the TET correctly assessed P4R a weakness for communications with FEMA officials; the TET was reasonable in not assessing Fluor a similar weakness, because Fluor's proposal delineated the communication roles of personnel, including a highly detailed chart. Case No. 18-985, ECF No. 31, Tab 23, AR 991. As to the weakness that the TET assessed P4R under Sub-factor 3, the TET was correct not to assign Fluor a similar weakness, because Fluor's approach, in responding to TO proposal requests, was clear and provided detail on the steps Fluor would take to select staff, by identifying the personnel responsible for implementing each step. Case No. 18-985, ECF No. 31, Tab 23, AR 1019.

Finally, the fact that the SSA adopted the well-documented SSDD, without revising or commenting on it, was reasonable. Case No. 18-985, Gov't Mot. at 42. The SSA was involved with the procurement since May 2017, reviewed the underlying evaluation documents prior to corrective action, spoke with the SSEB Chair about the evaluation, and reasonably adopted the detailed SSDD. Case No. 18-985, ECF No. 31, Tab 22, AR 982–3.

### 4.     The Intervenor's Response.

Fluor adds that, even if the plug number is replaced for CLIN 0004, "Fluor's proposed price (increased from $609,984,407.29 to $629,307,305.55) would still be within about three percent of the $610,395,542.77 IGCE . . . [and] nothing in the FAR or RFP states that to be reasonable an offeror's price is required to be less than the IGCE." Fluor Mot. at 12. In addition, the price premium of Fluor's proposal, compared with P4R, is consistent with "percentages found to be permissible by the case law." Fluor Mot. at 16.

The TET also correctly assigned Fluor a "Substantial Confidence" rating under Past Performance.  Fluor Mot. at 18.  P4R's insistence that the TET was required to "limit its [P]ast [P]erformance evaluation to assessing only whether Fluor's [P]ast [P]erformance demonstrated its capability of fielding 'a qualified staff of 400 personnel' and 'concurrently manag[ing] numerous task orders'" is incorrect, because proposals were evaluated on a pass/fail basis under the evaluation factor: Relevant Experience.  Case No. 18-985, Pl. Mot. at 19 (citing Case No. 18-985, ECF No. 31, Tab 5, AR 330) (emphasis deleted, original modification).  Likewise, the RFP did not preclude offerors from submitting individual PA-TAC III TOs as Past Performance references.  Fluor Mot. at 23.

Regarding Fluor's "Satisfactory" CPARS ratings, the RFP "did not dictate how FEMA must weigh various types of quality information[,]" allowing the TET to exercise discretion in affording Fluor a "Substantial Confidence" rating under Past Performance.  Fluor Mot. at 25.  Moreover, since the minor errors in the TER were not referenced in the SSDD's summary of Fluor's Past Performance evaluation, or in the trade-off analysis between Fluor and P4R, P4R cannot show prejudice.  Case No. 18-985, ECF No. 31, Tab 42, AR 1471, 1486–87, 1495–96.  Nor can P4R establish that the TET engaged in disparate treatment of the Technical evaluations, because "there were meaningful difference between Fluor's and P4R's proposals."  Fluor Mot. at 31.

In sum, the SSA is permitted by the FAR and case law to "rely on adequately documented reports and analyses prepared by others in making the award decision," and this is what the SSA did.  Fluor Mot. at 35.

## 5. Plaintiff's Reply.

P4R replies that it is not protesting the plug number used for CLIN 0004, but the fact "that the IGCE used a different plug number, and that [the SSEB] knowingly misinformed the SSA that Fluor's price was below the IGCE[.]"  Case No. 18-985, Pl. Reply at 4 (emphasis deleted).  FEMA's conclusion that Fluor's price was reasonable, based on the fact that all proposed prices were relatively close, is incorrect, because Fluor's overall price was 15% to 53% higher and not in the same range as other offerors.  Case No. 18-985, Pl. Reply at 5.

It also was unreasonable to ignore the CPARS "Satisfactory" ratings "when summarizing the projects and assigning Fluor's Substantial Confidence rating" and not discussing these ratings in the SSDD.  Case No. 18-985, ECF No. 31, Tab 59, AR 2213; Tab 42, AR 1486–87.  Likewise, there were numerous errors in Fluor's Past Performance that were not "clerical" as the Government claims; instead, the "pervasive nature of the errors calls into question the very rationality of the TET's evaluation."  Case No. 18-985, Pl. Reply at 8 (citing Case No. 18-985, Gov't Mot. at 29).

P4R also was prejudiced by FEMA allowing Fluor to submit individual TOs and considering the overall IDIQ contract, as this afforded "Fluor an unequal competitive advantage and allowed Fluor to flout the RFP's strict page limitations" and ignore the difference that would have been made if the TET properly conducted a Past Performance trade-off analysis.  Case No. 18-985, Pl. Reply at 13–14.

Finally, neither the Government nor Fluor refutes P4R's argument that the SSA abandoned the RFP's requirement to conduct a best value analysis, but instead awarded the contract to the

highest technically rated proposal, without regard to the reasonableness of Fluor's price.  Case No. 18-985, Pl. Reply at 20.

### 6.    The Government's Reply.

The Government replies that P4R "does not even attempt to address FAR § 15.305(a)(2)(ii)" that requires FEMA to consider information from other sources than identified in the RFP in evaluating Past Performance.  Case No. 18-985, Gov't. Reply. at 3.  Given FEMA's awareness of Fluor's overall performance under the PA-TAC III contract, it would have "arguably been improper for FEMA to have ignored it."  Case No. 18-985, Gov't. Reply at 7.  P4R also does not discuss that the FAR allows various price analysis techniques, including the comparison of proposed prices.  Case No. 18-985, Gov't Reply at 10.  Instead, P4R focuses on the plug number issue, failing to recognize that Fluor's price would still be within 3% of the IGCE, with an adjusted plug number and would not change relative to the other offerors.  Case No. 18-985, Gov't Reply at 11.

Assuming that the SSDD made a mistake in stating that all three of Fluor's Past Performance reference contracts were from Zone 1 and Fluor's price fell below the IGCE, neither of these shows how P4R is prejudiced.  Case No. 18-985, ECF No. 31, Tab 42, AR 1491, 1497.  Likewise, P4R's assertion that the SSA abandoned the RFP's best value requirement, citing the trade-off analysis of Fluor to Offeror 3, is not supported by the record, since that trade-off analysis contains a detailed discussion of the benefits of Fluor's proposal over Offeror 3, despite the fact they facially had identical Technical and Past Performance ratings.  Case No. 18-985, ECF No. 31, Tab 42, AR 1490–92.

### 7.    The Intervenor's Reply.

Fluor challenges "P4R's assertion that the SSA was unaware of Fluor's Satisfactory CPARS ratings" as it is contradicted by the record, because the SSA reviewed the initial TER that identified those ratings prior to award.  Fluor Reply at 6 (citing Case No. 18-985, ECF No. 31, Tab 22, AR 982).  In addition, the TET properly considered Fluor's overall PA-TAC III performance, based on information from Fluor's proposal, knowledge of Fluor's incumbent performance, and other contract references.  Case No. 18-985, ECF No. 31, Tab 44b, AR 1773–74; Tab 44a, AR 1767–70; Tab 5, AR 332.

### 8.    The Court's Resolution.

####     a.    Whether The Federal Emergency Management Agency's Price Reasonableness Determination Was Arbitrary, Capricious, Irrational, Or Unlawful.

FAR 15.404-1(b)(2) provides that "[t]he Government may use various price analysis techniques and procedures to ensure a fair and reasonable price[,]" including: (1) "[c]omparison of proposed prices received in response to the solicitation[;]" and (2) "[c]omparison of proposed prices with independent Government cost estimates."  48 C.F.R § 15.404-1(b)(2)(i), (v).  The former is one of two preferred techniques and "[n]ormally, adequate price competition establishes a fair and reasonable price."  48 C.F.R. 15.404-1(b)(2), (3).

39

The RFP stated that FEMA could utilize both of these methods.  Case No. 18-985, ECF No. 31, Tab 5, AR 334.  And, the record confirms that FEMA compared prices using both methods. Case No. 18-985, ECF No. 31, Tab 13, AR 662–63; Tab 42, AR 1488–89.  P4R, however, is correct that when the same plug number is used to calculate Fluor's price, it is higher than the IGCE, so that the SSDD's statement that "[a]ll offers [were] below the IGCE value of $610M for a [five] year period of performance" was mistaken.  Case No. 18-985, ECF No. 31, Tab 42, AR 1489.  But, the difference between Fluor's price and the other offerors does not change.  Therefore, the SSDD's comparison of the proposed prices was not affected, nor was it unreasonable to conclude that the price disparity between each offeror and the next lowest offeror did not exceed 20 percent, rendering Fluor's price reasonable.  Case No. 18-985, ECF No. 31, Tab 13, AR 663.  The fact that Fluor's price exceeded P4R's offer, by $210,628,845 is not sufficient to conclude that FEMA's "price reasonableness" determination was arbitrary and capricious.  *See Lockheed Missiles & Space Co. v. Bensten*, 4 F.3d 955, 959 (Fed. Cir. 1993) (upholding award decision where successful offeror was one-half billion dollars more than next offeror).

For these reasons, the court has determined that P4R has failed to establish that FEMA's price reasonableness evaluation was arbitrary, capricious, not rational, or unlawful.

### b. Whether The Federal Emergency Management Agency's Past Performance Evaluation Was Arbitrary, Capricious, Irrational, Or Unlawful.

FAR § 15.305(a)(2)(ii) provides that

[t]he solicitation shall describe the approach for evaluating past performance, including evaluating offerors with no relevant performance history, and shall provide offerors an opportunity to identify past or current contracts (including Federal, State, and local government and private) for efforts similar to the Government requirement.  The solicitation shall also authorize offerors to provide information on problems encountered on the identified contracts and the offeror corrective actions. The Government shall consider this information, *as well as information obtained from any other sources*, when evaluating the offeror past performance.  The source selection authority shall determine the relevance of similar past performance information.

48 C.F.R. § 15.305(a)(2)(ii) (emphasis added).

The United States Court of Appeals for the Federal Circuit has instructed trial courts not to "second guess" the discretionary determinations of procurement officials.  *See E.W. Bliss, Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996).  Therefore, "small errors made by the procuring agency are not sufficient grounds for rejecting an entire procurement."  *Grumman Data Systems Corp. v. Widnall*, 15 F.3d 1044, 1048 (Fed. Cir. 1994).  As such, it has been the practice of the court, "[i]n reviewing an evaluation of past performance, [to give] 'the greatest deference possible . . . to the agency.'"  *Sci. & Mgmt. Res., Inc. v. United States*, 117 Fed. Cl. 54, 65 (Fed. Cl. 2014) (quoting *Gulf Grp. Inc. v. United States*, 61 Fed. Cl. 338, 351 (Fed. Cl. 2004).

40

In this case, the RFP required FEMA to evaluate Past Performance based on three contract references, focusing on "contract description, contract objectives, contract type, price, final price, and period of performance[,]" utilizing the PPIRS, and examining PPQs. *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 332. As part of this evaluation, the TET reviewed the relevancy of each project to "establish similarity of size, scope, complexity, and type of experience as outlined in the PWS. *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 333. After considering all of this information, the SSEB rated an offeror at "the level at which the Government is confident the offeror will successfully perform at the required level of effort for the current acquisition." *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 333.

The TET assigned Fluor a "Substantial Confidence" rating under Past Performance, documenting each of Fluor's contract references strengths and significant strengths in the TER and found no weaknesses or significant weaknesses. Case No. 18-985, ECF No. 31, Tab 59, AR 2212–13. The TET also found that Fluor's "[P]ast [P]erformance . . . is the same as the requirements in the PWS[,] . . . [Fluor] provided technical expertise to develop PWS and perform special considerations reviews[,] . . . [and t]he Government has a high expectation that [Fluor] will be able to successfully perform." Case No. 18-985, ECF No. 31, Tab 59, AR 2215.

It was within the TET's discretion to consider the umbrella contracts that included Fluor's TO contract references, because the RFP did not preclude offerors from submitting individual TOs. Case No. 18-985, ECF No. 31, Tab 5, AR 332–3. In addition, FAR § 15.305(a)(2)(ii) required FEMA to consider information from sources other than those provided in response to the RFP. *See* 48 C.F.R. § 15.305(a)(2)(ii).[15] Therefore, the TET acted within its discretion in considering Fluor's PA-TAC III umbrella contracts. Likewise, the TET properly exercised its discretion in finding that each of Fluor's contract references were sufficiently relevant to the PA-TAC IV Contracts to warrant a "Substantial Confidence" rating. Case No. 18-985, ECF No. 31, Tab 59, AR 2210–15. In addition, the TET conducted a detailed analysis of Fluor's past contracts, examined the PPQ ratings and comments, and considered the CPARS. Case No. 18-985, ECF No. 31, Tab 59, AR 2210–15. The fact that Fluor received "Satisfactory" ratings for the CPARS is not sufficient to establish that the TET was arbitrary and capricious in assigning a "Substantial Confidence" rating to Fluor, based on all the available information. Case No. 18-985, ECF No. 31, Tab 59, AR 2210. In sum, FEMA "provided a coherent and reasonable explanation of [the] exercise of discretion" in awarding Fluor a "Substantial Confidence" rating under Past Performance. *See Impresa*, 238 F.3d at 1332–33.

In addition, the errors contained within the TER are not sufficient to establish that the TET's rating of "Substantial Confidence" was not reasonable. *See Grumman Data Systems*, 15 F.3d at 1048 ("[S]mall errors made by the procuring agency are not sufficient grounds for rejecting an entire procurement."). The RFP did not require Zone specific contract references and the strengths and significant strengths that the TET assessed Fluor's three contract references and PPQs were

---

[15] "The Government shall consider this information [provided in accordance with the RFP], *as well as information obtained from any other sources*, when evaluating the offeror past performance." 48 C.F.R. § 15.305(a)(2)(ii) (emphasis added).

sufficient to justify the "Substantial Confidence" rating.  Case No. 18-985, ECF No. 31, Tab 59, AR 2212–13.

For these reasons, the court has determined that P4R has failed to establish that FEMA's Past Performance evaluation was arbitrary, capricious, not rational, or unlawful.

> **c.    Whether The Federal Emergency Management Agency's Technical Evaluation Was Arbitrary, Capricious, Irrational, Or Unlawful.**

Technical ratings "involve discretionary determinations of procurement officials that a court will not second guess."  *E.W. Bliss*, 77 F.3d at 449; *see also FirstLine Transp. Sec., Inc. v. United States*, 100 Fed. Cl. 359, 397 (Fed. Cl. 2011) ("The assignment of technical ratings is a matter that is within the broad discretion of the procuring agency, and this court will not intrude into that area in the absence of truly irrational conduct on the part of the agency.").

In this case, P4R's contentions that the TET disparately rated the Technical Factors is without merit.  The TET assigned P4R a weakness for the frequency of communication with FEMA and identifying the TM as the sole point of contact with FEMA, although the PM also planned to communicate with FEMA.  Case No. 18-985, ECF No. 31, Tab 59, 2223.  The TET did not assign Fluor a corresponding rating, although its proposal included overlapping communications with FEMA personnel, because Fluor's proposal contained a chart delineating interaction with FEMA and a breakdown of specific communication roles and responsibilities.  Case No. 18-985, ECF No. 31, Tab, 23, AR 991–92.  Assessing P4R a weakness for communications with FEMA cannot be said to be to "truly irrational conduct on the part of the agency."  *FirstLine*, 100 Fed. Cl. at 397; *see Active Network*, 130 Fed. Cl. at 430 (declining to find disparate treatment, because of "meaningful differences" between proposals).  In addition, the TET did not treat P4R disparately in assessing a weakness for personnel selection for TOs.  *Compare* Case No. 18-985, ECF No. 31, Tab 59, AR 2228 (P4R did not explain whether the PM, DPM, and DRM "each reviews the requirements [of the staff assignments] differently, if at all, or whether the [DPM] and [DRM] submit a recommendation to the [PM] for concurrence.") *with* Case No. 18-985, ECF No. 31, Tab 23, AR 1020 (Fluor proposal stating that "[c]andidates [will be] rated and ranked . . . by the [DRM], who provides the analysis results to the PM and [DPM] for review and final selection.").

For these reasons, the court has determined that P4R has failed to establish that FEMA's technical evaluation was arbitrary, capricious, not rational, or unlawful.

> **d.    Whether The Federal Emergency Agency's Best Value Decision Was Arbitrary, Capricious, Irrational, Or Unlawful.**

The United States Court of Appeals for the Federal Circuit has held that when "a contract [is] to be awarded based on 'best value,' the contracting officer [has] even greater discretion than if the contract were to [be] awarded on the basis of cost alone."  *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (citation omitted); *see also E.W. Bliss*, 77 F.3d at 449 ("Procurement officials have substantial discretion to determine which proposal represents the best value for the government.").  Of course, "price (or cost) must always be a 'factor' in an agency's

decision to award a contract." *Lockheed Missiles*, 4 F.3d at 959 (citations omitted).  Therefore, an agency is permitted to select a higher priced proposal if the "technical advantages [are] worth the extra cost."  *Id.* at 960 (upholding award decision where technical advantages warranted higher costs of one-half billion dollars).

> FAR § 15.308 provides, in relevant part, that

> [w]hile the SSA may use the reports and analyses prepared by others, the source selection *shall represent the SSA's independent judgment.*  The source selection decision shall be documented and the documentation shall include the rationale for any business judgments and tradeoffs *made or relied on* by the SSA, including benefits associated with additional costs.  Although the rationale for the selection decision must be documented, that documentation need not quantify the tradeoffs that led to the decision.

48 C.F.R § 15.308 (emphasis added).

In this case, the RFP required the SSA to make a decision based on the best value to FEMA considering three factors: Technical, Past Performance, and Price, with Technical "significantly more important" than Past Performance, and Technical and Past Performance combined "significantly more important" than Price.  *See e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 329 (emphasis deleted).  The SSDD detailed the tradeoff analysis between Fluor and the other acceptable offerors.  Case No. 18-985, ECF No. 31, Tab 42, AR 1468–1547.  The tradeoff analysis between Fluor and P4R also explained the technical benefits of both proposals, concluding: "[a]lthough both offerors had the same [P]ast [P]erformance rating, and [P4R] is lower priced, the strengths and weaknesses associated with [Fluor]'s proposal under Factor 1 in comparison to the strengths and weaknesses associated with [P4R]'s proposal justify paying the higher price."  Case No. 18-985, ECF No. 31, Tab 42, AR 1497.

P4R's contention that the SSA ignored the RFP by awarding the contract to the highest technically rated offeror, so long as price was deemed reasonable, is without merit.  The record reflects that the SSA acted consistent with the RFP in awarding the contract to Fluor, because Fluor had the highest technically rated proposal and the SSDD's trade-off analysis documented the benefits of Fluor's proposal balanced against the higher price.  Case No. 18-985, ECF No. 31, Tab 42, AR 1495–97; *see Lockheed Missiles*, 4 F.3d at 960 (finding the "technical advantages were worth the extra cost").  Likewise, the selection of Fluor over Offeror 3 does not establish that the SSA did not follow the RFP.  *See id.* (finding the agency, "through its price/technical analysis, neither disregarded price nor discounted it to such a degree that it was effectively rendered meaningless").

The SSDD also complied with the RFP in conducting the tradeoff analysis between Fluor and P4R as to Past Performance, because the Technical Factor was "significantly more important" than Past Performance.  Case No. 18-985, ECF No. 31, Tab 5, AR 329 (emphasis deleted).  The record evidences that the SSA concluded that Fluor's higher rated proposal for the Technical Factor, combined with the identical "Substantial Confidence" ratings for Past Performance, justified a contract award.  Case No. 18-985, ECF No. 31, Tab 42, AR 1495–97.  Nor were the decisions of

the SSEB and SSA arbitrary and capricious for deciding not to discuss the Past Performance tradeoff in more detail.  Likewise, it was well within the SSEB and SSA's discretion to conduct a more detailed tradeoff analysis regrading Fluor's and Offeror 3's Past Performance, since both were rated "Very Good" for the Technical Factor and in each Sub-factor.  Case No. 18-985, ECF No. 31, Tab 42, AR 1490–92.

Nor do the errors identified by P4R in the SSDD render the SSA's best value decision unreasonable.  The major "error" cited by P4R is that the SSDD states that the price difference between Fluor and P4R was 41.7 percent, instead of 53 percent; however, since there is no requirement in the RFP that a price premium analysis be conducted, this is not an error.  In any event, the record reflects that the SSA was aware of the actual price difference before the contract was awarded.  Case No. 18-985, ECF No. 31, Tab 42, AR 1488.  *See SupplyCore Inc. v. United States*, 132 Fed. Cl. 480, 494 (Fed. Cl. 2017) ("Whether the price difference is expressed as 0.73% or 8.35%, as plaintiff urges that it should have been, the fact remains that the agency understood the difference in absolute dollars between the two proposals.").

Finally, P4R argues that the SSA failed to exercise independent judgment.  The SSDD, however, sufficiently documented the "rationale for any business judgments and tradeoffs made or relied on by the SSA," since FAR § 15.308 "does not require that a *separate* document be written by the SSA indicating the rationale[.]"  *Akal Security, Inc. v. United States*, 103 Fed. Cl. 310, 335 (Fed. Cl. 2011) (original emphasis) (determining that the SSA's failure to provide a separate analysis was not required, even though he/she adopted the findings of others and indicated concurrence by signing his/her name next to the word "Approved").  In this case, the SSA was very familiar with the details of the procurement, having been involved with it since May 2017, reviewed the underlying evaluation documents prior to corrective action, spoke with the SSEB Chair about the evaluation, and reviewed the SSDD.  Case No. 18-985, ECF No. 31, Tab 22, AR 982–3; *see Akal Security*, 103 Fed. Cl. at 336 (finding no indication that the SSA did not exercise independent judgment by relying on reports of others).[16]

For these reasons, the court has determined that P4R has failed to establish that FEMA's best value decision was arbitrary, capricious, not rational, or unlawful.

**E.    Case No. 18-986.**

**1.    Plaintiff's September 4, 2018 Amended Complaint.**

Count I of the September 4, 2018 Amended Complaint in Case No. 18-986 alleges that FEMA conducted an irrational and disparate Past Performance evaluation.  Case No. 18-986, Am.

---

[16] P4R's analogy to *FirstLine*, 100 Fed. Cl. at 382, as an example of an SSA rubber-stamping the decision of the SSEB is misplaced.  In that case, the documentation of the SSA's decision consisted of a paragraph that did not mention the protestor's proposal and contained no tradeoff analysis.  *Id.* at 383 ("Because a tradeoff analysis necessarily involves the comparison of more than one proposal, a document that mentions only the winning proposal cannot be viewed as documentation of the tradeoff analysis that resulted in its selection.").  In this case, the SSDD reflects a thorough tradeoff analysis of all technically acceptable offerors.  Case No. 18-985, ECF No. 31, Tab 424, AR 1489–97.

Compl. ¶¶ 52–67.   Specifically, Count I alleges that FEMA overrated Serco under the Past Performance Factor and held "P4R to a much more exacting relevancy standard than Serco."   Case No. 18-986, Am. Compl. ¶¶ 55, 61.

Count II of the September 4, 2018 Amended Complaint alleges that FEMA's best value decision was irrational.   Case No. 18-986, Am. Compl. ¶¶ 68–103.   Specifically, Count II alleges that FEMA (1) abandoned the RFP's requirement in making a best value evaluation; (2) failed to meaningfully consider price when determining best value; and (3) irrationally failed to analyze Past Performance discriminators.   Case No. 18-986, Am. Compl. ¶¶ 70, 80, 86.   In addition, Count II alleges that the SSDD does not reflect that the SSA made an independent decision.   Case No. 18-986, Am. Compl. ¶ 95.

Count III of the September 4, 2018 Amended Complaint alleges that FEMA failed to properly investigate the unequal access to information violation by Serco in hiring a former FEMA official.   Case No. 18-986, Am. Compl. ¶¶ 104–118.

Count IV of the September 4, 2018 Amended Complaint alleges that FEMA's evaluation of Technical Proposals suffered from several material flaws.   Case No. 18-986, Am. Compl. ¶¶ 119–159.   Specifically, Count IV alleges that (1) FEMA's original evaluations provide significantly different ratings for P4R and Serco than those reflected in the final SSDD, without any explanation; (2) FEMA engaged in disparate treatment in evaluating P4R and Serco's proposals regarding consistency and frequency of communication; (3) FEMA improperly favored Serco's PM over P4R's; and (4) misevaluated P4R's staffing approach, programmatic and technical resources, DRM, DPM, and CM.   Case No. 18-98,6 Am Compl. ¶¶ 121–23, 124, 130, 135, 140, 144, 150, 156.

## 2.   Plaintiff's Argument.

P4R argues that the three references Serco submitted "do not reasonably support the Substantial Confidence rating the TET assigned."   Case No. 18-986, Pl. Mot. at 9.   Serco also failed to show any experience with the central focus of the PA program, disaster and recovery infrastructure.   Case No. 18-986, Pl. Mot. at 10.   In addition, none of Serco's contracts were "essentially the same" in scope and complexity as PA-TAC IV Contract.   Case No. 18-986, Pl. Mot. at 11–13.

The TET also held P4R to a much more exacting relevancy standard than Serco, engaging in disparate treatment.   Case No. 18-986, Pl. Mot. at 14.   For P4R's third contract reference, the TET assigned only a "Relevant" rating and failed to assign any strengths for this contract; in contrast, two of Serco's contract references merited "Very Relevant" ratings, when the work performed was less relevant to the PA-TAC IV Program.   Case No. 18-986, Pl. Mot. at 15–16.

P4R also argues that the SSA abandoned the best value method in Zone 2 and opted instead to make an award to the "offeror it viewed as offering the strongest technical proposal, regardless of price premium, as long as it believed the price was reasonable[.]"   Case No. 18-986, Pl. Mot. at 17.   Here, FEMA apparently was willing to pay a $135,199,117.86 or 33.9% price premium in Zone 2.   Case No. 18-986, Tab 49, AR 1597–99.   As with Zone 1, disregard of price as a meaningful evaluation violates the CICA.   Case No. 18-986, Pl. Mot. at 19.   Specifically, the SSDD failed to "justify why award to Serco's higher-priced proposal is warranted."   Case No. 18-986, Pl. Mot. at

20.  In addition, the SSDD for Zone 2 failed to reference the price of P4R or Serco in the trade off analysis, but mentioned only that Serco's price was higher and, without any analysis, concluded "[Serco's] proposal merits paying the price premium."  Case No. 18-986, Tab 49 at 1599.

The SSA also failed to identify Past Performance discriminators between P4R and Serco or look behind the "Substantial Confidence" ratings each received.  Case No. 18-986, Pl. Mot. at 22–23.  And, as with Zone 1, the SSA failed to exercise his independent judgment and rubber-stamped the pre-made SSDD.  Case No. 18-986, Pl. Mot. at 25.

Regarding the Zone 2 award, the CO "inadequately investigated and failed to meaningfully consider" Serco's competitive advantage obtained by unequal access to information gained by ▮▮▮ ▮▮▮▮▮▮▮▮▮, a former FEMA senior recovery official who presided over a number of disasters, where he necessarily obtained "first-hand knowledge of FEMA's methodologies for ordering PA-TAC services, including source selection preferences."  Case No. 18-986, Pl. Mot. at 29.  ▮▮▮▮▮ also was the "lead FEMA representative for the implementation of a new PA grant process on a pilot program in Oregon" creating an appearance of a conflict with the PA-TAC IV Program.  Case No. 18-986, Pl. Mot. at 29 (citing Case No. 18-986, ECF No. 29, Tab 25, AR 902).  ▮▮▮▮ ▮▮▮▮▮ access to non-public information is evidenced by an email stating he was "the guy that designed and implemented the new model they are contracting for" and "kn[e]w the questions and the answers[.]"  Case No. 18-986, ECF No. 29, Tab 27, AR 906.  In fact, Serco's proposal emphasized ▮▮▮▮▮▮▮▮ special knowledge.  Case No. 18-986, ECF No. 29, Tab 33, AR 1131.  The investigation, after the initial GAO protest, however, failed to inquire "whether ▮▮▮▮▮▮▮ had non-public information not otherwise available when he joined Serco."  Case No. 18-986, Pl. Mot. at 31 (citing Case No. 18-986, ECF No. 29, Tab 22, AR 898).

Regarding the Technical Factor, P4R argues that the "the evaluators' original handwritten notes and TET's consensus form provide significantly different ratings for P4R and Serco than those found in the SSDD[.]"  Case No. 18-986, Pl. Mot. at 34 (citing Case No. 18-986, ECF No. 29, Tab 53, AR 1967–74, 1984–89; Tab 55, AR 2057; Tab 65, AR 2211).  In addition, the TET inconsistently assigned significant strengths and strengths, such as with Sub-factor 2, in assigning Serco a significant strength for Serco's PM's knowledge and experience, but only a strength for P4R's PM, who has nearly identical experience and knowledge.  Case No. 18-986, Tab 49, AR 1585.  The TET's assessment of weaknesses to P4R under Sub-factor 2 was also flawed and unequal.  Case No. 18-986, Pl. Mot. at 36.  The TET also unreasonably assessed: (1) P4R a significant weakness, because P4R's DRM's Bachelor of Science in Oceanographic Technology did not have an education in a "related technical field," but then failed to assign any weakness to Serco's DPM, who had degrees in Information Systems, National Resources Strategy, and Computer Science; (2) P4R a weakness for P4R's DPM not having a minimum of ten years of program management experience, when a meaningful review of her resume showed otherwise; and (3) P4R's CM a significant weakness for failing to satisfy the RFP's educational requirements, when he exceeded them.  Case No. 18-986, ECF No. 29, Tab 7, AR 512; Tab 65, AR 2251–2, 2259.

In addition, the TET failed to assess P4R with significant strengths as to the Technical Factor.  Case No. 18-986, Pl. Mot. at 37.  P4R received a strength for its staffing approach under Sub-factor 3, but should have received a significant strength for additional features that exceeded the RFP requirements.  Case No. 18-986, ECF No. 29, Tab 7, AR 518.  Similarly, the TET assigned

P4R only a strength for programmatic/technical resources, when P4R far exceeded the RFP's requirements.  Case No. 18-986, ECF No. 29, Tab 65, AR 2252.

### 3.    The Government's Response.

The Government responds that the TET evaluated the Technical Proposals in accordance with the terms of the RFP.  Case No. 18-986, Gov't Mot. at 12.  As to the different initial ratings, the final TER explained that the TET evaluators "discussed the results of their evaluation and collectively agreed" with the final ratings and these final ratings are reasonable.  Case No. 18-986, ECF No. 29, Tab 65, AR 2111.  Regarding Sub-factor 2, the TET was reasonable in assigning Serco's PM a significant strength, but P4R's PM a strength, because Serco's PM had FEMA leadership experience in program management, as well as PA-TAC experience.  Case No. 18-986, ECF No. 29, Tab 49, AR 1585.  The TET's assessments of a weakness for P4R's DRM also was reasonable and not disparate, because the TET concluded that computer science and information systems are part of business management and administration; oceanographic technology is not.  Case No. 18-986, ECF No. 29, Tab 65, AR 2259, 2252.  The TET also reasonably concluded that P4R's DPM failed to meet FEMA's education requirements, because the work experience section of her resume did not support the resume's narrative.  Case No. 18-986, ECF No. 29, Tab 65, AR 2251; Tab 7, AR 504-07.  In addition, the TET reasonably assessed P4R's CM a significant weakness for not meeting the educational requirements, because his resume did not illustrate that an Alternative Dispute Resolution degree was a law degree nor at least 24 semester hours of law or organizational and management courses.  Case No. 18-986, ECF No. 29, Tab 7, AR 512.

Regarding the Past Performance evaluation, the RFP "did not preclude a non-incumbent offeror from having Very Relevant experience."  Case No, 18-986, Gov't Mot. at 22 (citing Case No. 18-986, ECF No. 29, Tab 5, AR 341).  Therefore, the TET reasonably concluded that "the tasks performed by Serco under each of its [P]ast [P]erformance contracts were essentially similar or similar in terms of scope and magnitude to the tasks described in the PWS."  Case No. 18-986, Gov't Mot. at 33 (citing Case No. 18-986, ECF No. 29, Tab 65, AR 2261-63).  In addition, P4R's "Relevant" rating was justified compared with Serco's two references that merited "Very Relevant" ratings, because those contracts were more complex, larger, and involved managing more personnel.  Case No. 18-986, Gov't Mot. at 31-32.

Regarding P4R's claim that the CO inadequately investigated the competitive advantage Serco had by hiring ████████, FEMA conducted a thorough investigation and concluded there were no hard facts to support an OCI.  Case No. 18-986, Gov't Mot. at 33-34.  In addition, other PA-TAC III contractors were provided with a copy of the statement of work for the Oregon task proposal and there was no evidence that ████████ was involved in the development of the requirements of the RFP.  Case No. 18-986, ECF No. 29, Tab 24, AR 898.  In sum, P4R cannot "point to or identify a single piece of non-public information that would suggest that there was an unfair competitive advantage."  Case No. 18-986, Gov't Mot. at 37-38.

As with Zone 1, the SSDD did not disregard the RFP's best value requirement, engaged in a meaningful discussion of price, and properly considered Past Performance.  Case No. 18-986, Gov't Mot. at 40-44.  The SSA also exercised independent judgment in making the award decision.  Case No. 18-986, Gov't Mot. at 45.

#### 4.        The Intervenor's Response.

Serco adds that P4R "carefully avoids using the words 'organizational conflicts of interest' or acronym 'OCI'—likely in an effort to avoid the 'hard facts' standard that applies to OCIs." Serco Mot. at 9.  The record reflects that FEMA conducted an in-depth investigation, including "reviewing information available from within the agency about ████████ prior roles and tasks in FEMA, asking questions of Serco, consulting with the SSEB [C]hair, and consulting with FEMA's legal counsel." Serco Mot. at 11 (citing Case No. 18-986, ECF No. 29, Tab 1, AR 74–81; Tabs 22–26, AR 889–905). ████████ email was simply "puffing about his involvement with and knowledge of the delivery model" and, in any event, he was not the principal architect of the relevant delivery model. Serco Mot. 14–15.

Regarding P4R's contentions that Serco's Past Performance contract references did not support the "Substantial Confidence" rating, disaster recovery experience is not of paramount importance, because the RFP required professional response services for only 20% of the requirement of the PA-TAC IV Contract. Case No. 18-986, ECF No. 29, Tab 5, AR 269.  The PWS objectives focus on elements of readiness management, administration, and staffing, along with tasks including background checking, management and deployment.  Case No. 18-986, ECF No. 29, Tab 5, AR 346–51.

Regarding P4R's argument that the price difference improperly was reflected in the SSDD, P4R is incorrect; the price differential between Serco and P4R is "25%, not the 34% that P4R claims." Serco Mot. at 38 (emphasis deleted) (citing Case No. 18-986, ECF No. 29, Tab 1, AR 67). Serco's price was less than the IGCE and in line with every offeror, except P4R, suggesting P4R's price was unrealistically low.  Case No. 18-986, ECF No. 29, Tab 49, AR 1593–94.

#### 5.        Plaintiff's Reply.

P4R replies that the Government and Serco's arguments about the relevancy of Serco's Past Performance illustrates the unreasonableness of the TET's evaluation that focused on one aspect of the relevancy determination, not the size, scope, complexity, and type of experience together, as required by the RFP.  Case No. 18-986, ECF No. 29, Tab 5, AR 341.  Although an offeror need not have performed disaster recovery services for FEMA, the purpose of the PA program was to provide such services and this should have been considered in the relevancy determination.  Case No. 18-986, ECF No. 29, Tab 5, AR 341, 351.

There is nothing in the record that explains "why or when the [initial TET] ratings were changed, or even who was responsible for that change." Case No. 18-986, Pl. Reply at 12.

The SSDD also failed to justify the award to Serco's higher priced proposal.  Case No. 18-986, Pl. Reply at 16.  The generic discussion of Serco's purported benefits did not provide a detailed explanation of why technical advantage is worth the extra cost, since as "the magnitude of price differential increases, the relative benefits yielded by the higher priced offer must also increase." Case No. 18-986, Pl. Reply at 16.

The competitive advantage Serco gained by ████████ is that he was a FEMA official, which is not an OCI claim. Case No. 18-986, Pl. Reply at 23–24 (citing 48 C.F.R § 9.505). Even if some information was released to the public concerning the Oregon pilot program, ████████

"certainly had vast amounts of non-public information from running the Oregon pilot program and his other duties at FEMA." Case No. 18-986, Pl. Reply at 26.

### 6.      The Government's Reply.

The Government replies that two additional worksheets[17] explain the time and context of the changed ratings, and there is no requirement that the SSDD contain all pre-decisional deliberation. Case No. 18-986, Gov't Reply at 3–4. P4R also "does not and cannot identify any actual errors [regarding the Technical Evaluations] and its claim of inconsistencies amounts to nothing more than mere disagreement with the TET's subjective judgment." Case No. 18-986, Gov't Reply at 5. In addition, P4R's argument that disaster relief services experience "should" have been given more weight in the Past Performance evaluations fails to establish that FEMA's evaluation was inconsistent with the RFP. Case No. 18-986 Pl. Reply at 6; Case No. 18-986, ECF No. 29, Tab 5, AR 341.

### 7.      The Intervenor's Reply.

Serco adds that P4R mischaracterizes whether Serco's contract references are relevant to the PA-TAC IV Contracts, because the "tasks and objectives reflected in the RFP focused on management and administration and did [not] seek particularized disaster recovery experience; the key personnel qualifications sought business skills and not particularized disaster recovery experience; and the labor categories identified are primarily non-professional and do not seek particularized disaster recovery experience." Serco Reply at 2 (citing Case No. 18-986, ECF No. 29, Tab 5, AR 276–81).

The errors that P4R attributes to the SSDD merely reflect P4R's subjective disagreements with the TET's ratings. Serco Reply at 13.

### 8.      The Court's Resolution.

#### a.      Whether The Federal Emergency Management Agency's Past Performance Evaluation Was Arbitrary, Capricious, Irrational, Or Unlawful.

The United States Court of Appeals for the Federal Circuit has instructed trial courts not to "second guess" the discretionary determinations of procurement officials. *See E.W. Bliss*, 77 F.3d at 449. As such, it has been the practice of the court, "[i]n reviewing an evaluation of past performance, [to give] 'the greatest deference possible . . . to the agency.'" *Sci. & Mgmt. Res.*, 117 Fed. Cl. at 65 (quoting *Gulf Grp.*, 61 Fed. Cl. at 351).

In this case, the RFP required FEMA to evaluate Past Performance based on three contract references, focusing on "contract description, contract objectives, contract type, price, final price, and period of performance[,]" utilizing the PPIRS, and examining PPQs. *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 332. As part of this evaluation, the TET reviewed the relevancy of each project to "establish similarity of size, scope, complexity, and type of experience as outlined

---

[17] These are the two documents discussed above. *See supra* note 8.

in the PWS." *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 333.  After considering all of this information, the SSEB rated an offeror at "the level at which the Government is confident the offeror will successfully perform at the required level of effort for the current acquisition." *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 333.

The record reflects that the work performed in Serco's references was sufficiently similar to the PA-TAC IV Contracts to warrant a "Substantial Confidence" rating.  Case No. 18-986, ECF No. 29, Tab 65, AR 2211.  Specifically, for each of Serco's contract references the TER documented the type of work performed, identified the workforce, and determined the relationship to the PA-TAC IV Program.  Case No. 18-986 ECF No. 29, Tab 65, AR 2262–63.  In addition, the TER documented the strengths of each reference, found no weaknesses, and noted the mostly "Outstanding" PPQ ratings and PPRIS all "Very Good" and one "Exceptional" ratings.  Case No. 18-986, ECF No. 29, Tab 65, AR 2262–63.  P4R's argument that Serco's contract references failed to show experience with disaster and recovery infrastructure and, therefore, do not justify the TET's "Substantial Confidence" rating is without merit, because the RFP did not require such experience and the objectives and tasks identified in the PWS concern more than disaster and recovery infrastructure.  Case No. 18-986, ECF No. 29, Tab 5, AR 340-341, 346–51, 348–49.  In addition, the SSDD "provided a coherent and reasonable explanation of [the] exercise of discretion" in awarding Serco a "Substantial Confidence" rating under Past Performance.  *Impresa*, 238 F.3d at 1332–33; *see* Case No. 18-986 ECF No. 29, Tab 65, AR 2261–63.

The court does not consider whether the TET held P4R to a more exacting relevancy standard than Serco, because P4R was awarded the same "Substantial Confidence" rating as Serco.  Case No. 18-986, ECF No. 29, Tab 65, AR 2211.  Consequently, the underlying differences in Past Performance would only be significant in the trade-off analysis of the best value decision, if Serco and P4R similarly were rated under the Technical Factor; the RFP stated that the Technical Factor was "significantly more important" than Past Performance.  *See e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 329 (emphasis deleted).  Serco was rated higher under the Technical Factor and the court does not find these ratings unreasonable.  *See Bannum*, 404 F.3d at 1353 ("There is nothing besides [plaintiff's] conjecture to support the contention that another review . . . would provide it a substantial chance of prevailing in the bid."); *see also Active Network*, 130 Fed. Cl. at 431–32 ("While both of [plaintiff's] arguments may have some merit, [plaintiff] cannot establish that it was prejudiced by the agency's evaluation[.]").  Therefore, P4R did not establish prejudice as to disparate ratings.

For these reasons, the court has determined that P4R failed to establish that FEMA's Past Performance evaluation was arbitrary, capricious, not rational, or unlawful.

### b.   Whether The Federal Emergency Management Agency's Technical Evaluation Was Arbitrary, Capricious, Irrational, Or Unlawful.

Technical ratings "involve discretionary determinations of procurement officials that a court will not second guess." *E.W. Bliss*, 77 F.3d at 449; *see also FirstLine*, 100 Fed. Cl. at 397 ("The assignment of technical ratings is a matter that is within the broad discretion of the procuring

agency, and this court will not intrude into that area in the absence of truly irrational conduct on the part of the agency.").

P4R's contentions that the TET disparately rated the Technical Factor is without merit. Under Sub-factor 2, the TET assigned Serco a significant strength for Serco's PM's previous leadership experience with FEMA and program management experience, but gave P4R only a strength for P4R's PM's experience in the PA-TAC Program. Case No. 18-986, ECF No. 29, Tab 49, AR 1585. This, however, is not "truly irrational conduct on the part of the agency[,]" because Serco's PM had prior leadership experience with FEMA, while P4R's PM did not. *See FirstLine*, 100 Fed. Cl. at 397; *see also Active Network*, 130 Fed. Cl. at 430 (declining to find disparate treatment, because there was "meaningful differences" between proposals). Similarly, the TET did not treat P4R disparately in assessing a significant weakness for the DRM's failure to meet the educational requirements, because it was reasonable to conclude that oceanographic technology is not a "degree in business management or business administration or a related technical field." Case No. 18-986, ECF No. 29, Tab 5, AR 277; Tab 65, AR 2252, 2259.

In addition, the TET was not arbitrary and capricious in concluding that P4R's DPM did not "have a minimum 10 years of experience performing management functions[,]" because it reasonably concluded that the duties of her positions did not demonstrate management experience. Case No. 18-986, ECF No. 29, Tab 5, AR 277; Tab 65, AR 2251–52. Also, the TET did not engage in "truly irrational conduct" in assessing a significant weakness to P4R's CM, because his resume did not reflect at least 24 semester hours in one of the necessary fields. *See FirstLine*, 100 Fed. Cl. at 397; Case No. 18-986, ECF No. 29, Tab 65, AR 2252.

P4R's argument about the changes in Technical Factor ratings from the TET's initial worksheets to those in the TER is also without merit, because the TET changed the ratings "[b]ased on [c]omments by OCC, the CO, [and] upon further evaluation of the proposal[s.]" Case No. 18-986, ECF No. 43-1 at 2, AR 2345; *see also Tetra Tech, Inc. v. United States*, 137 Fed. Cl. 367, 384 (Fed. Cl. 2017) ("[A] consensus evaluation process presumes that evaluators can and will change their minds.").

For these reasons, the court has determined that P4R has failed to establish that FEMA's technical evaluation was arbitrary, capricious, not rational, or unlawful.

### c.      Whether The Federal Emergency Management Agency's Best Value Decision Was Arbitrary, Capricious, Irrational, Or Unlawful.

The United States Court of Appeals for the Federal Circuit has held that when "a contract [is] to be awarded based on 'best value,' the contracting officer [has] even greater discretion than if the contract were to [be] awarded on the basis of cost alone." *Galen Med. Assocs.*, 369 F.3d at 1330 (citation omitted); *see also E.W. Bliss*, 77 F.3d at 449 ("Procurement officials have substantial discretion to determine which proposal represents the best value for the government."). Of course, "price (or cost) must always be a 'factor' in an agency's decision to award a contract." *Lockheed Missiles*, 4 F.3d at 959 (citations omitted). Therefore, an agency is permitted to select a higher

priced proposal if the "technical advantages [are] worth the extra cost." *Id.* (upholding award decision where technical advantages warranted higher costs of one-half billion dollars).

In this case, the RFP required the SSA to make the best value decision based on the best value as a whole to FEMA, considering the factors: Technical, Past Performance, and Price, with Technical "significantly more important" than Past Performance, and Technical and Past Performance combined "significantly more important" than Price. *See e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 329 (emphasis deleted). The SSDD explained the tradeoffs between Serco and P4R, and the technical benefits of Serco's proposal relative to P4R's. Case No. 18-986, ECF No. 29, Tab 49, AR 1597–99. The SSDD concluded: "Although [Serco]'s price is higher than [P4R's] who is the lowest priced offeror, given the fact that [Serco] has very highly qualified key personnel, compared to [P4R]'s underqualified employees as well as the other associated strengths and weaknesses when compared to one another, [Serco]'s proposal merits paying the price premium." Case No. 18-986, ECF No. 29, Tab 49, AR 1599.

P4R's contention that the SSA abandoned the RFP's best value requirement is without merit, for the same reasons as discussed regarding Case No. 18-985. In addition, P4R has not established that price was not a meaningful consideration or that the SSDD's trade-off analysis did not sufficiently document the benefits of Serco's proposal to justify the higher price. Case No. 18-986, ECF No. 29, Tab 49, AR 1597–99. Price was not reduced to a nominal factor, since the SSDD concluded that Serco's price was reasonable and Serco's Technical and Past Performance ratings justified the award, even though it had a higher priced proposal. Case No. 18-986, ECF No. 29, Tab 49, AR 1593–94; *see Lockheed Missiles*, 4 F.3d at 960 (finding the agency, "through its price/technical analysis, neither disregarded price nor discounted it to such a degree that it was effectively rendered meaningless").

The SSDD reflected adherence to the priorities of the RFP in conducting the tradeoff analysis between Serco and P4R weighing the Technical Factor higher than Past Performance. Finally, P4R's argument that the SSA failed to exercise its independent judgment is without merit for the same reasons previously discussed regarding Case No. 18-985.

For these reasons, the court has determined that P4R has failed to establish that FEMA's best value decision was arbitrary, capricious, not rational, or unlawful.

> ### d.   Whether The Federal Emergency Management Agency Failed To Disqualify Serco, Inc. For An Appearance Of Impropriety.

FAR § 3.101-1 provides that

> Government business shall be conducted in a manner above reproach and, except as authorized by statute or regulation, with complete impartiality and with preferential treatment for none. . . . The general rule is to avoid strictly any conflict of interest or even the appearance of a conflict of interest in Government-contractor relationships.

48 C.F.R. §3.101–1.

The United States Court of Appeals for the Federal Circuit has held that an agency can base a decision to disqualify a bidder on the appearance of impropriety.  *See NFK Engineering, Inc. v. United States*, 805 F.2d 372, 376 (Fed. Cir. 1986).  Whether there is an appearance of impropriety sufficient to disqualify a bidder "depend[s] upon the circumstances in each case." *Id.*  There is no appearance of impropriety when "[a] disinterested observer knowing all the facts and the applicable law would see nothing improper." *R & W Flammann GmbH v. United States*, 339 F.3d 1320, 1324 (Fed. Cir. 2003).  But, an appearance of impropriety must be based on "hard facts" and not "suspicion and innuendo." *CACI, Inc.–Fed. v. United States*, 719 F.2d 1567, 1581–82 (Fed. Cir. 1983); *see also Harkon, Inc. v. United States*, 133 Fed Cl. 441, 463–64 (Fed Cl. 2017) (applying the "hard facts" standard to an appearance of impropriety claim).[18]

In this case, Serco's PM, █████████, was a FEMA employee from December 2009 through July 2016.  Case No. 18-986, ECF No. 29, Tab 24, AR 896–97.  ██████ oversaw recovery efforts in a pilot program located in Oregon.  Case No. 18-986, ECF No. 29, Tab 24, AR 896.  Therefore, FEMA's CO flagged the issue as a potential OCI and asked FEMA legal counsel to evaluate this situation, question the Chief of Contracts and Financial Management Branch of the Public Assistance Division, and send an investigative letter to Serco.  Case No. 18-986, ECF No. 29, Tab 24, AR 894–96; Tab 25.  Serco's response explained that ██████ did not participate in drafting Serco's proposal and was not involved with the PA-TAC Contracts.  Case No. 18-986, ECF No. 29, Tab 24, AR 895, 897.  The CO determined that no competitive advantage existed, because "at no time was ██████ involved with the acquisition process of PA[-]TAC IV requirements and/or documentation[,] . . . privy to any sensitive information regarding source selection[, and the i]nformation regarding the FEMA PA Pilot Program [was] available to the public by searching the internet[.]"  Case No. 18-986, ECF No. 29, Tab 24, AR 897.

Therefore, P4R has not established the existence of any impropriety, because P4R has not identified any hard facts and a "[a] disinterested observer knowing all the facts and the applicable law would see nothing improper." *R & W Flammann*, 339 F.3d at 1324; *see also Harkon*, 133 Fed Cl. at 462–63 (finding no appearance of impropriety when former agency official lacked access to relevant information regarding the procurement process, was not involved in preparation of the RFP, and information was available in the public domain).

For these reasons, the court has determined that P4R has failed to establish that FEMA failed to disqualify Serco for the appearance of impropriety.

---

[18] The Government and Serco argue that the court should treat P4R's appearance of impropriety claim as an OCI claim, citing *A Squared JV v. United States*, 136 Fed. Cl. 321, 330 n. 6 (2018) ("The unfair competitive advantage analysis stemming from a firm's use of a former government employee is virtually indistinguishable from . . . an allegation that a firm has gained an unfair competitive advantage arising from its unequal access to information as a result of an [OCI]."). The court does not consider whether P4R's claim is the same as an OCI, because it finds that P4R has not satisfied the burden of proof to establish an appearance of impropriety.

F.     **Case No. 18-988.**

1.     **Plaintiff's September 4, 2018 Amended Complaint.**

Count I of the September 4, 2018 Amended Complaint in Case No. 18-988 alleges that FEMA conducted an irrational and disparate Past Performance evaluation. Case No. 18-988, Am. Compl. ¶¶ 51–60.

Count II of the September 4, 2018 Amended Complaint alleges that FEMA's best value decision is irrational. Case No. 18-988, Am. Compl. ¶¶ 61– 101. Specifically, Count II alleges that the SSDD (1) was riddled with errors; (2) improperly abandoned the RFP's mandate when determining best value; (3) irrationally failed to analyze Past Performance discriminators; (4) failed to meaningfully consider price in determining best value; and (5) does not reflect that the SSA made an independent decision. Case No. 18-988, Am. Compl. ¶¶ 63, 67, 75, 87, 93.

Count III of the September 4, 2018 Amended Complaint alleges that FEMA's evaluation of Technical Proposals includes multiple material flaws. Case No. 18-988, Am. Compl. ¶¶ 102–140. Specifically, Count III alleges that the TET: (1) inconsistently evaluated proposals regarding communication frequency and training approaches; (2) irrationally failed to assign P4R significant strengths for functioning jointly with FEMA and P4R's internal staffing plan; (3) unreasonably assigned a weakness for P4R's DRM and labor category identification. Case No. 18-988, Am. Compl. ¶¶ 104, 109, 116, 121, 125, 136.

2.     **Plaintiff's Argument.**

P4R argues that the TET held P4R to a more exacting standard than CCPRS in assigning strengths for Past Performance. Case No. 18-988, Pl. Mot. at 11–12. The TET assigned P4R strengths for each contract reference, but a significant strength for CCPRS's performance under the PA-TAC III contract. Case No. 18-988, ECF No. 28, Tab 53, AR 2536, 2501. This rating was disparate, because P4R's PA-TAC III reference contracts demonstrated performance of numerous task orders in Zone 3. Case No. 18-988, ECF No. 28, Tab 7, AR 502. The TET also assigned CCPRS a significant strength for earning two outstanding ratings and two good ratings on the PA-TAC III PPQ, but assigned P4R only a strength, although P4R's PPQ demonstrated outstanding ratings in all categories. Case No. 18-988, ECF No. 28, Tab 53, AR 2501–02, 2536.

In addition, the TET failed to consider the CPARS in the PPIRS to "the greatest extent possible" as required by the RFP. Case No. 18-988, ECF No. 28, Tab 5, AR 319. Instead, the TET reviewed one CPAR in PPIRS for CCPRS that indicated CCPRS received only "Satisfactory" ratings in all areas of review during the most recent PA-TAC III performance. Case No. 18-988, ECF No. 28, Tab 39, AR 2075. The TER, however, characterized these ratings as a strength and apparently did not factor them into CCPRS's "Substantial Confidence" rating. Case No. 18-988, ECF No. 28, Tab 53, AR 2501–02.

The TET also engaged in disparate treatment in evaluating the Technical Proposals and "made irrational findings that are contrary to the facts and the RFP terms." Case No. 18-988, Pl. Mot. at 30. For example, the TET inconsistently evaluated Sub-factor 1, criticizing the lack of detail and alleged vagueness about communications with FEMA staff, but did not assign CCPRS a comparable weakness for making similar vague statements. Case No. 18-988, Tab 53, AR 2532,

2497; Tab 23, AR 915.  In addition, the TET inconsistently assessed strengths and significant strengths, such as in assigning CCPRS a significant strength under Sub-factor 1 for training strategy, although describing P4R's training strategy in similar terms, but assigning a strength only. Case No. 18-988, ECF No. 28, Tab 12, AR 596, 631.  The TET also irrationally failed to assign P4R with multiple strengths and significant strengths, by: (1) assigning P4R a strength under Sub-factor 1 regarding the ability to function jointly with FEMA, but the TET should have assigned P4R a significant strength; (2) assigning P4R a strength for P4R's internal staffing under Sub-factor 3, when this should have been rated a significant strength.  Case No. 18-988, Pl. Mot. at 34–35 (citing Case No. 18-988, ECF No. 28, Tab 7, AR 453, 492–3).

In addition, the TET irrationally assessed a weakness to P4R's proposal, because the DRM did not have sufficient experience "in each region making up the relevant zone[,]" although this requirement was not in the RFP.  Case No. 18-988, Pl. Mot. at 36.  And, the TET unreasonably assigned P4R a weakness under Sub-factor 1, as to labor category identification, again relying on an unstated evaluation criterion.  Case No. 18-988, ECF No. 28, Tab 52, AR 631.

The SSDD also contained errors that "left the SSA profoundly misinformed about the true comparative position of offerors."  Case No. 18-988, Pl. Mot. at 14.  For example, the Past Performance analysis in the SSDD contained errors regarding CCPRS and another offeror, DCG, that undermined the validity of the award decision.  Case No. 18-988, Tab 36, AR 1276; Tab 53, AR 2509–10.

As with Zones 1 and 2, the SSDD also abandoned the RFP's requirement to make a best value decision, instead awarding to the strongest Technical Proposal, with a reasonable price.  Case No. 18-988, Pl. Mot. at 17.  By accepting CCPRS's proposal for Zone 3, FEMA was willing to pay a $78,386,345 or 20% price premium, but failed to justify or document why an award to CCPRS's higher-priced proposal was warranted.  Case No. 18-988, ECF No. 28, Tab 36, 1278, 1280-82.  The SSDD also failed to identify Past Performance discriminators between P4R and CCPRS or look behind the "Substantial Confidence" ratings each received.  Case No. 18-988, ECF No. 28, Tab 36 at 1226.  And, as with Zones 1 and 2, the SSA failed to exercise his independent judgment and rubber-stamped the pre-made SSDD.  Case No. 18-988, Pl. Mot. at 27.

### 3.    The Government's Response.

The Government responds that P4R's arguments about the Technical evaluations "amounts to nothing more than disagreement with the TET's technical scoring of [P4R's] proposal."  Case No. 18-988, Gov't Mot. at 13.  The TET's assessment of P4R a weakness in communications under Sub-factor 1 was reasonable, even though the TET did not assess a weakness for CCPRS.  Case No. 18-988, ECF No. 28, Tab 23, AR 915, 922, 930.  As for assigning P4R a strength for training strategy and CCPRS a significant strength, these ratings do not evidence disparate treatment, because the two training strategies were not the same—for example, CCPRS's included the use of a training platform, "CFIT," and an "innovative approach" of using "YouTube" to educate staff. Case No. 18-988, ECF No. 28, Tab 53, AR 2496; Tab 36, AR 1263; Tab 23, AR 925–26.  P4R's complaint about being assigned strengths, instead of significant strengths, also fails to establish that the TET acted unreasonably.  Case No. 18-988, Gov't Mot. at 17–18.  P4R's complaint about the TET assessing a weakness for labor identification likewise is without merit, because Attachment 2 of the RFP sets forth the education and qualification requirements for each of the labor categories

and the RFP required an evaluation of this type of information.  Case No. 18-988, ECF No. 28, Tab 5, AR 255–60; Tab 1, AR 27–29.

The TET also reasonably assessed P4R a significant weakness, because the DRM's work experience did not demonstrate the requisite experience and Zone 3 knowledge.  Case No. 18-988, ECF No. 28, Tab 53, AR 2533.  The RFP explicitly stated that offerors would be evaluated based on their key personnel's "knowledge of the proposed Zone."  Case No. 18-988, ECF No. 28, Tab 5, AR 318.  Therefore, the TET did not act disparately in not assigning CCPRS a similar weakness for key personnel, since CCPRS demonstrated the required experience.  Case No. 18-988, ECF No. 28, Tab 53, AR 2497–99.

The TET also did not hold P4R to a more exacting standard under the Past Performance evaluation.  Case No. 18-988, Gov't Mot. at 30.  CCPRS did not receive a significant strength only for PPQ ratings, but also for comments on the contract references.  Case No. 18-988, ECF No. 28, Tab 53, AR 2501–02.  P4R's references' comments did not reflect that it "exceeds many requirements" or provided "exceptional customer services."  Case No. 18-988, ECF No. 28, Tab 53, AR 2501–02, 2536.

In addition, the TET acted within its discretion in assigning a strength for CCPRS's CPARS information and P4R cannot show prejudice, because it received the same "Substantial Confidence" rating.  Case No. 18-988, ECF No. 28, Tab 53, AR 2502.

Regarding the errors in the SSDD of another offeror, DCG, these were clerical and had no impact on the award decision.  Case No. 18-988, ECF No. 28, Tab 36, AR 1282.

Finally, the SSDD did not disregard the RFP's best value requirement, engaged in a meaningful discussion of price, and properly considered Past Performance.  Case No. 18-988, Gov't Mot. at 34–39.  And, there is no evidence that the SSA failed to exercise independent judgment in making the award decision.  Case No. 18-988, Gov't Mot. at 39.

### 4.     The Intervenor's Response.

CCPRS adds that CCPRS and P4R's Past Performance was not "the same work, the same volume of work, in the same states, or with the same people under the predecessor PA-TAC III contract[,]" so P4R cannot show disparate treatment.  CCPRS Mot. at 10.  Regarding the Technical evaluations, P4R's challenges "amount to nothing more than self-serving quibbling with FEMA's technical assessments, which cannot provide a basis of the [c]ourt to find in favor of P4R."  CCPRS Mot. at 22.

### 5.     Plaintiff's Reply.

P4R replies that P4R "received reduced credit for better ratings" in the PPQs.  Case No. 18-988, Pl. Reply at 6 (emphasis deleted).  P4R is also prejudiced by the Past Performance errors, "because the SSA would have been aware of the true relative strengths in P4R's [P]ast [P]erformance."  Case No. 18-988, Pl. Reply at 7.  Regarding the errors in the Technical evaluations, these inaccuracies are not merely clerical, because they tainted the SSDD, the only document the SSA reviewed in making its award.  Case No. 18-988, ECF No. 28, Tab 22, AR 908.  And, the RFP establishing the Technical ratings as more important than the Past Performance, did

not remove FEMA's responsibility to conduct a meaningful Past Performance trade-off.  Case No. 18-988, Pl. Reply at 20–21.

### 6.     The Government's Reply.

The Government replies that P4R restates arguments about the Technical Factor evaluation and does not respond to the Government Cross-Motion.  Case No. 18-988, Pl. Reply at 11–12.  P4R also fails to respond to the Government's arguments regarding the PPQs.  Case No. 18-988, Pl. Reply at 6.  Nor does P4R meaningfully respond to the fact that any clerical errors concerning another offeror are not relevant to the thorough SSDD tradeoff decision between CCPRS and P4R.  Case No. 18-988, Gov't Reply at 10.

### 7.     The Intervenor's Reply.

CCPRS adds that P4R failed to demonstrate prejudice regarding any minor errors in the SSDD and overstates that they "call[] into question the credibility of the entire award decision."  Case No. 18-988, Pl. Reply at 14.  In addition, to the extent that there existed Past Performance discriminators, it was CCPRS not P4R that was harmed.  CCPRS Reply at 8.

### 8.     The Court's Resolution.

#### a.     Whether The Federal Emergency Management Agency's Past Performance Evaluation Was Arbitrary, Capricious, Irrational, Or Unlawful.

The United States Court of Appeals for the Federal Circuit has instructed trial courts not to "second guess" the discretionary determinations of procurement officials.  *See E.W. Bliss*, 77 F.3d at 449.  As such, it has been the practice of the court, "[i]n reviewing an evaluation of past performance, [to give] 'the greatest deference possible . . . to the agency.'"  *Sci. & Mgmt. Res.*, 117 Fed. Cl. at 65 (quoting *Gulf Grp.*, 61 Fed. Cl. at 351).

In this case, the RFP required FEMA to evaluate Past Performance based on three contract references, focusing on "contract description, contract objectives, contract type, price, final price, and period of performance[,]" utilizing the PPIRS, and examining PPQs.  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 332.  As part of this evaluation, the TET reviewed the relevancy of each project to "establish similarity of size, scope, complexity, and type of experience as outlined in the PWS.  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 333.  After considering all of this information, the SSEB rated an offeror at "the level at which the Government is confident the offeror will successfully perform at the required level of effort for the current acquisition."  *See, e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 333.

The court does not need to consider whether the TET held P4R to a more exacting standard than CCPRS under the Past Performance evaluation, because P4R was awarded the same "Substantial Confidence" rating as CCPRS.  Case No. 18-988, ECF No. 28, Tab 53, AR 2480.  Consequently, the underlying differences in Past Performance would only be significant in the trade-off analysis of the best value decision, if CCPRS and P4R similarly were rated under the Technical Factor; the RFP stated that the Technical Factor was "significantly more important" than

Past Performance. *See e.g.*, Case No. 18-985, ECF No. 31, Tab 5, AR 329 (emphasis deleted). CCPRS was rated higher under the Technical Factor and the court does not find these ratings unreasonable. *See Bannum*, 404 F.3d at 1353 ("There is nothing besides [plaintiff's] conjecture to support the contention that another review . . . would provide it a substantial chance of prevailing in the bid."). Therefore, P4R did not establish prejudice as to disparate ratings.

P4R also did not establish prejudice from the TET's alleged failure to consider the PPIRS to the greatest extent possible. P4R is correct that the RFP states that "the Government will consider [P]ast [P]erformance information contained in PPIRS to the greatest extent possible." Case No. 18-988, ECF No. 28, Tab 5, AR 319. The Past Performance evaluation, however, consisted of a multi-factor analysis of contract references, PPIRS, PPQs, and relevancy. Case No. 18-988, ECF No. 28, Tab 5, AR 319–20. The rating of "Satisfactory" under a PPIRS does not establish that the "Substantial Confidence" rating of CCPRS was unreasonable. But for the TET assigning CCPRS a strength for the PPIRS, there is sufficient basis in the record to justify the TET's "Substantial Confidence" rating, in light of several significant strengths, strengths, and no weaknesses. Case No. 18-988, ECF No. 28, Tab 53, AR 2501–02; *see Active Network*, 130 Fed. Cl. at 431–32 ("While both of [plaintiff's] arguments may have some merit, [plaintiff] cannot establish that it was prejudiced by the agency's evaluation[.]").

For these reasons, the court has determined that P4R has failed to establish that FEMA's Past Performance evaluation was arbitrary, capricious, not rational, or unlawful.

>   **b.    Whether The Federal Emergency Management Agency's Technical Evaluation Was Arbitrary, Capricious, Irrational, Or Unlawful.**

Technical ratings "involve discretionary determinations of procurement officials that a court will not second guess." *E.W. Bliss*, 77 F.3d at 449; *see also FirstLine*, 100 Fed. Cl. at 397 ("The assignment of technical ratings is a matter that is within the broad discretion of the procuring agency, and this court will not intrude into that area in the absence of truly irrational conduct on the part of the agency.").

P4R's contention that the TET disparately rated the Technical Factors is without merit. The TET assigned P4R a weakness for lack of detail and vague communications with FEMA staff, noting that P4R's proposal used the terms "regularly" and "periodically" with "no discussion of what periodically or regularly consists of." Case No. 18-988, ECF No. 28, Tab 53, AR 2531. It was reasonable for the TET not to assess CCPRS a similar weakness, because CCPRS's proposal mentioned "quarterly call[s]" and reporting "weekly." Case No. 18-988, ECF No. 28, Tab 23, AR 922; *see Active Network*, 130 Fed. Cl. at 430 (declining to find disparate treatment, because of "meaningful differences" between proposals). The TET also was not disparate in assigning P4R a strength for training strategy and CCPRS a significant strength, because CCPRS's proposal included a self-developed training platform and the "innovative approach" of using "YouTube" to educate its staff. Case No. 18-988, ECF No. 28, Tab 53, AR 2496. And, the TET was not arbitrary and capricious in assigning P4R a significant weakness for the DRM, as her resume did not demonstrate the necessary relevant experience "to quantitative and qualitative requirements as it relates to deployment of staff and deployment readiness." Case No. 18-988, ECF No. 28, Tab 53, AR 2533. In contrast, the TET found and documented how CCPRS's PM, DPM, and CM's

experience exceeded the RFP requirements.  Case No. 18-988, ECF No. 28, Tab 53, AR 2497–98. Therefore, P4R cannot prove disparate treatment, because "meaningful differences" existed between the two proposals as to personnel's experience.  *Active Network*, 130 Fed. Cl. at 430.

P4R's argument that the weakness assessed to its DRM was based on an unstated criterion is likewise without merit, because the RFP states that "[o]fferors shall [] demonstrate the key personnel's knowledge of [the] proposed zone."  Case No. 18-988, ECF No. 28, Tab 5, AR 318.

The court does not determine whether the TET assigned P4R a weakness, based on an unstated criterion regarding labor category identification, because the TET assessed CCPRS with the same weakness.  Case No. 18-988, ECF No. 28, Tab 53, AR 2497.

For these reasons, the court has determined that P4R has failed to establish that FEMA's Technical evaluation was arbitrary, capricious, not rational, or unlawful.

### c.     Whether The Federal Emergency Management Agency's Best Value Decision Was Arbitrary, Capricious, Irrational, Or Unlawful.

The United States Court of Appeals for the Federal Circuit has held that when "a contract [is] to be awarded based on 'best value,' the contracting officer [has] even greater discretion than if the contract were to [be] awarded on the basis of cost alone."  *Galen Med. Assocs.*, 369 F.3d at 1330 (citation omitted); *see also E.W. Bliss*, 77 F.3d at 449 ("Procurement officials have substantial discretion to determine which proposal represents the best value for the government.").  Of course, "price (or cost) must always be a 'factor' in an agency's decision to award a contract."  *Lockheed Missiles*, 4 F.3d at 959 (citations omitted).  Therefore, an agency, is permitted to select a higher priced proposal if the "technical advantages [are] worth the extra cost"  *Id.* (upholding award decision where technical advantages warranted higher costs of one-half billion dollars).

In this case, the RFP required FEMA to make the best value decision, based on the best value as a whole to the Government, considering three factors: Technical, Past Performance, and Price, with Technical "significantly more important" than Past Performance, and Technical and Past Performance combined "significantly more important" than Price.  *See e.g.*, Case No. 18-988 ECF No. 31, Tab 5, AR 329 (emphasis deleted).  The SSDD explained the tradeoffs between CCPRS and P4R, weighing the technical benefits of CCPRS's proposal relative to P4R's.  Case No. 18-988, ECF No. 28, Tab 36, AR 1281–82.  The SSDD concluded:

> [CCPRS]'s cost/price offer was the second lowest offer and the lowest offer was [P4R].  However, based on the comparative [T]echnical evaluation and basis for award, [CCPRS]'s [T]echnical [P]roposal provides significant strengths and strengths that demonstrates a level of confidence and benefits when compared to [P4R]'s [T]echnical [P]roposal which has an overall technical rating of Acceptable.  [CCPRS]'s [T]echnical [P]roposal will fully achieve the Governments requirement with minimum risk and will outweigh any cost savings starting with day 1 of the contract.

Case No. 18-988, ECF No. 28, Tab 36, AR 1282 (emphasis deleted).

P4R's contention that the SSDD abandoned the RFP's best value requirement is without merit, for the same reasons as discussed regarding Case No. 18-985. In addition, P4R has not established that price was not a meaningful consideration, as the SSDD's trade-off analysis documents the benefits of CCPRS's proposal to justify the higher price. Case No. 18-988, ECF No. 28, Tab 36, AR 1281–82. Nor was price reduced to a nominal factor: the SSDD concluded that CCPRS's price was reasonable and provided sufficient justification for awarding to the higher priced proposal. Case No. 18-988, ECF No. 28, Tab 36, AR 1281–82; *see Lockheed Missiles*, 4 F.3d 955 at 960 (finding the agency, "through its price/technical analysis, neither disregarded price nor discounted it to such a degree that it was effectively rendered meaningless").

Likewise, P4R's contention that the errors regarding DCG call into question the credibility of the award decision is without merit, because "small errors made by the procuring agency are not sufficient grounds for rejecting an entire procurement." *Grumman Data Systems*, 15 F.3d at 1048.

The SSDD reflected adherence to the priorities of the RFP in conducting the tradeoff analysis between CCPRS and P4R, weighing the Technical Factor higher than Past Performance. Finally, P4R's argument that the SSA failed to exercise its independent judgment is without merit for the same reasons as discussed regarding Case No. 18-985.

For these reasons, the court has determined that P4R has failed to establish that FEMA's best value decision was arbitrary, capricious, not rational, or unlawful.

## IV.     CONCLUSION.

For these reasons, P4R's August 10, 2018 Motion For Judgment On The Administrative Record in Case No. 18-985, August 13, 2018 Motion For Judgment On The Administrative Record in Case No. 18-986, and August 14, 2018 Motion For Judgment On The Administrative Record in Case No. 18-988 are denied; the Government's September 7, 2018 Motion For Judgment On The Administrative Record in Case No. 18-985, September 10, 2018 Motion For Judgment On The Administrative Record in Case No. 18-986, and September 11, 2018 Motion For Judgment On The Administrative Record in Case No. 18-988 are granted. All other pending motions are denied as moot. The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Senior Judge**